Roy Kenji YAMADA, M.D., Petitioner,

v.

Laura FRIEND, Individually and as Personal Representative of the Estate of Sarah Elizabeth Friend, Deceased, and Luther Friend, Individually, Respondents.

No. 08–0262.

Supreme Court of Texas.

Argued March 10, 2009.

Decided Dec. 17, 2010.

---

---

J. Kevin Carey, Carey Law Firm, Bonnie Susan Bleil, Law Office of Bleil & King, Fort Worth, TX, for Roy Kenji Yamada, M.D.

Darrell L. Keith, Courtney Shannon Keith, Arin Kay Schall, Keith Law Firm, P.C., Jeffrey H. Kobs, Kobs, Haney & Hundley, LLP, Fort Worth, TX, for Laura Friend.

George A. Staples Jr., Taylor Olson Adkins Sralla & Elam, Fort Worth, TX, for other interested party City of North Richland Hills.

Russell Ramsey, Ramsey & Murray, Houston, TX, for other interested party Jeff Ellis.

Justice JOHNSON delivered the opinion of the Court.

In this appeal we address whether claims against a health care provider based on one set of underlying facts can be brought as both health care liability claims subject to the Texas Medical Liability Act (TMLA) and ordinary negligence claims not subject to the TMLA. We hold that they cannot.

Sarah Friend collapsed at a water park and later died. As a result of her death her parents sued several parties, including Roy Yamada, M.D. Sarah's parents alleged that Dr. Yamada negligently advised the water park about safety procedures and placement of defibrillators. They did not file an expert report as is required by the TMLA for health care liability claims.

The court of appeals held that the Friends' allegations that Dr. Yamada's actions violated medical standards of care were health care liability claims and the Friends were required to comply with provisions of the TMLA as to those claims. The Friends do not dispute that holding. The court also held, however, that the Friends' allegations that the same actions by Dr. Yamada violated ordinary standards of care and were not subject to the TMLA.

We hold that because all the claims against Dr. Yamada were based on the same underlying facts, they must be dismissed because the Friends did not timely file an expert report. When the underlying facts are encompassed by provisions of

the TMLA in regard to a defendant, then all claims against that defendant based on those facts must be brought as health care liability claims. Application of the TMLA cannot be avoided by artfully pleading around it or splitting claims into both health care liability claims and other types of claims such as ordinary negligence claims.

## I. Background

### A. Trial Court

The city of North Richland Hills owns and operates North Richland Hills Family Water Park. In July 2004, twelve-year-old Sarah Friend was waiting in line for one of the water park rides when she collapsed. Personnel from the water park and North Richland Hills Fire Department administered emergency aid and she was then transported to a hospital where she died from a heart condition.

Sarah's mother and father, Laura[1] and Luther Friend, sued the City and several individual defendants. They alleged that Sarah's death was proximately caused by the defendants' failure to timely and properly evaluate and care for her after she collapsed. The Friends' allegations focused on the failure of water park personnel to use an automated external defibrillator (AED) in attending to Sarah.

The Friends eventually joined Dr. Yamada as a defendant. They alleged that he (1) was a licensed medical doctor who specialized in emergency medicine; (2) "had a duty to exercise ordinary care and act as an emergency medicine physician of reasonable and ordinary prudence under the same or similar circumstances"; (3) "was responsible for and provided medical consultative advice and recommendations to and for the various safety practices and procedures" at the water park prior to and

as of the date Sarah collapsed; (4) "had a duty under Texas law to exercise ordinary care and act as an emergency medicine physician of reasonable and ordinary prudence" in providing services to the water park; and (5) breached "that duty" by (a) failing to timely, properly, and adequately provide services to the water park and (b) committing "other acts or omissions of negligence or wrongdoing." There was never a doctor-patient relationship between Dr. Yamada and Sarah.

The Friends did not file an expert report pursuant to Texas Civil Practice and Remedies Code section 74.351 after they sued Dr. Yamada, so he filed a motion to dismiss. *See* TEX. CIV. PRAC. & REM.CODE § 74.351(a), (b). The Friends' response specified that their claims were based on Dr. Yamada's provision of medical consultative advice and recommendations in regard to various safety practices and procedures at the water park. The trial court denied Dr. Yamada's motion and he appealed. *See id.* § 51.014(a)(9) (authorizing interlocutory appeal from an order denying a motion to dismiss for lack of an expert report).

### B. Court of Appeals

The court of appeals noted that the only alleged acts or omissions on which the Friends based their claims against Dr. Yamada were his failure to properly provide advice and recommendations to the City about its safety practices, including the placement and maintenance of AEDs. 335 S.W.3d 201, 205. It determined that the pleadings stated claims for negligence based on breach of an emergency medicine physicians' standard of care, but also stated claims for ordinary negligence. *Id.* at 205. The appeals court reasoned that medical testimony is not required to estab-

---

1. Laura sued individually and as representative of Sarah's estate.

lish the proper placement of AED devices, thus such claims were not health care liability claims because the alleged negligence was not based on advice directly related to acts performed or furnished by a health care provider to Sarah during her medical care, treatment, or confinement. The court held that the trial court properly refused to dismiss the claims based on allegations of ordinary negligence. *Id.* at 205. However, the court also held that the pleadings alleging Dr. Yamada gave negligent advice about where to locate AEDs were health care liability claims to the extent they alleged Dr. Yamada had a duty to act as an emergency physician under the circumstances and he breached that duty. The court held that the Friends' failure to file an expert report required dismissal of the claims based upon allegations of breach of an emergency room physician's standard of care. *Id.* at 206. Thus, the court of appeals held that the same acts and omissions by Dr. Yamada formed the basis of both health care and non-health care claims based on pleadings alleging that the acts and omissions breached different standards of care.

### C. Positions of the Parties

The Friends did not file a petition for review. But Dr. Yamada did and we granted it. 52 Tex.Sup.Ct.J. 331, 333 (Feb. 13, 2009).

Dr. Yamada asserts that the court of appeals erred in two ways. First, he argues the court construed the definition of health care liability claim based on a breach of accepted standards of safety too narrowly. Second, he asserts the court impermissibly allowed "claim splitting" by holding that the same underlying facts gave rise to an ordinary negligence claim, which the court held could continue, and a health care liability claim, which the court dismissed. The difference between the claims, Dr. Yamada urges, is nothing more than artful pleading.

In their brief, the Friends specify that Dr. Yamada's connection to Sarah's death was his consultative services in regard to placement of life-saving devices such as the AEDs. They do not dispute the court of appeals' characterization of their claims as alleging only that Dr. Yamada failed to properly provide advice and recommendations to the City about its safety practices. And they agree that the court of appeals "correctly ... reversed the trial court's order denying Petitioner Dr. Yamada's motion to dismiss [their] claims that are based on a standard of medical care and dismissed those claims with prejudice." However, they argue that their ordinary negligence claim should not be dismissed because it is not in essence a health care liability claim. The Friends first assert that their ordinary negligence claim is not for breach of standards of medical care or health care as those terms are defined in the TMLA. Next, they argue that to be a health care liability claim for breach of an accepted standard of safety under the TMLA, the claim must be for an act or omission directly related to health care, which their ordinary negligence claim is not. *See* TEX. CIV. PRAC. & REM.CODE § 74.001(a)(13).

We agree with Dr. Yamada in part.[2] The court of appeals' holding that the Friends asserted health care liability claims against Dr. Yamada is unchallenged and all their claims were based on the same facts. The Friends' claims against

---

2. Our decision makes it unnecessary to consider whether the court of appeals properly construed the TMLA's language regarding breaches of accepted standards of safety. It is also unnecessary to consider the effect, if any, of the lack of a doctor-patient relationship between Dr. Yamada and Sarah.

Dr. Yamada cannot be split into health care and non-health care claims by pleading that his actions violated different standards of care; all their claims must be dismissed.

## II.  Claims Under the TMLA

The TMLA requires the trial court to dismiss a suit asserting health care liability claims against a physician or health care provider if the plaintiff does not timely file an expert report as to that defendant. *Id.* § 74.351. The TMLA defines "health care liability claim" as

> [A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13).

■ Whether a claim is a health care liability claim depends on the underlying nature of the claim being made. *Garland Cmty. Hosp. v. Rose,* 156 S.W.3d 541, 543 (Tex.2004) (addressing former Tex.Rev.Civ. Stat. art. 4590i, *repealed by* Act of June 2, 2003, 78th Leg., ch. 204, § 10. 09, 2003 Tex. Gen. Laws 847, 884). Artful pleading does not alter that nature. *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 854 (Tex.2005); *Garland Cmty. Hosp.,* 156 S.W.3d at 543.

## III.  Discussion

■ In *Diversicare,* Maria Rubio was the victim of a sexual assault at a nursing home. 185 S.W.3d at 845. Rubio filed suit against the nursing home based in part on claims that the home failed to hire and train appropriate personnel to monitor Ru-

bio, failed to provide twenty-four-hour nursing services from a sufficient number of qualified nursing personnel to meet her nursing needs, hired incompetent staff who were unqualified to care for her, and failed to establish and implement appropriate safety policies to protect its residents. *Id.* The concurring and dissenting justices in *Diversicare* concluded that Rubio asserted a premises liability claim against the nursing home independent of her health care liability claim. *Id.* at 857–58 (Jefferson, C.J., concurring in part, and dissenting in part) (pointing to Rubio's claims that the home failed to protect her by failing to implement safety precautions and establish appropriate corporate safety, training, and staffing policies); *id.* at 861–66 (O'Neill, J., dissenting) (construing Rubio's claim that the facility failed to use ordinary care to protect her from a known danger to be a premises liability claim). The Court rejected the view that Rubio could allege a claim for premises liability independent of her healthcare liability claim because it "would open the door to splicing health care liability claims into a multitude of other causes of action with standards of care, damages, and procedures contrary to the Legislature's explicit requirements. It is well settled that such artful pleading and recasting of claims is not permitted." *Id.* at 854; *see also Murphy v. Russell,* 167 S.W.3d 835, 838 (Tex.2005) ("[A] claimant cannot escape the Legislature's statutory scheme by artful pleading."); *Garland Cmty. Hosp.,* 156 S.W.3d at 543 ("Plaintiffs cannot use artful pleading to avoid the MLIIA's requirements when the essence of the suit is a health care liability claim.").

Because the Friends do not challenge the court of appeals' holding that their claims against Dr. Yamada are in part health care liability claims and based on facts covered by the TMLA, the question before us is whether claims based on the

same facts can alternatively be maintained as ordinary negligence claims. We hold that they cannot.

Despite agreeing that the court of appeals correctly dismissed their health care liability claims based on the acts and omissions of Dr. Yamada, the Friends allege that his conduct can also be measured by ordinary standards of care as opposed to standards that require specific expertise in health care. But it would be hard to find a health care liability claim in which some action by the health care provider or physician arguably would not be within the common knowledge of jurors, and thus would support a claim for ordinary negligence. This case is a prime example of such a claim. The Friends assert that the same actions and omissions by Dr. Yamada are governed by both standards requiring expert testimony to establish—one of the factors that can be considered in determining whether a claim is a health care liability claim—and standards that do not require expert testimony.

The Friends reference other examples in their brief. In *Institute for Women's Health, P.L.L.C. v. Imad*, 2006 WL 334013, 2006 Tex.App. Lexis 1182 (Tex. App.-San Antonio Feb. 15, 2006, no pet.), an embryologist dropped a tray of embryos and destroyed all of them except one. The Friends note their agreement with the holding that the claims against the embryologist were health care liability claims because the specific acts and omissions of the embryologist were an inseparable part of the health and medical transaction. But even though the carrying of the tray was an inseparable part of the health and medical services, the care required in carrying a tray of embryos without dropping it could have been asserted as ordinary negligence because the care required to carry a tray—whether one carrying embryos or something else such as a child's lunch—is not generally outside the common knowledge of jurors.

The Friends also reference *Valley Baptist Medical Center v. Azua*, 198 S.W.3d 810 (Tex.App.-Corpus Christi 2006, no pet.). There a hospital employee was assisting a patient into a wheelchair. The employee allegedly failed to block the wheels of the wheelchair and the patient was injured when the wheelchair moved as the patient was attempting to sit in it. *Id.* at 814. It certainly could be argued, as Azua did, that expert testimony is not necessary to establish the need to secure a wheelchair so it will not move when an ill patient tries to sit down in it. Nevertheless, the Friends note their agreement with the court of appeals' holding that the Azua's claim, although pled as an ordinary negligence claim, was a health care liability claim. *Id.*

Clearly, particular actions or omissions underlying health care liability claims can be highlighted and alleged to be breaches of ordinary standards of care. But if the same underlying facts are allowed to give rise to both types of claims, then the TMLA and its procedures and limitations will effectively be negated. Plaintiffs will be able to entirely avoid application of the TMLA by carefully choosing the acts and omissions on which to base their claims and the language by which they assert the claims.

Our prior decisions are to the effect that if the gravamen or essence of a cause of action is a health care liability claim, then allowing the claim to be split or spliced into a multitude of other causes of action with differing standards of care, damages, and procedures would contravene the Legislature's explicit requirements. *Diversicare*, 185 S.W.3d at 854. Those decisions dictate the outcome here. The Friends' allegations that Dr. Yamada's actions breached ordinary standards of care did

not change either the substantive basis or the nature of the claims.

## IV. Conclusion

Based on the unchallenged holding of the court of appeals that the Friends' claims based on Dr. Yamada's actions encompassed health care liability claims, all their claims should have been dismissed because they did not file an expert report. We affirm the court of appeals' judgment to the extent it reversed the trial court's order and dismissed some of the Friends' claims. We reverse the court of appeals' judgment to the extent it affirmed the trial court's order denying Dr. Yamada's motion to dismiss. Because Dr. Yamada requested his attorney's fees and costs in the trial court under Texas Civil Practice and Remedies Code section 74.351(b)(1), we remand to that court with instructions to dismiss all the Friends' claims against Dr. Yamada and consider his request for attorney's fees and costs.