IN THE SUPREME COURT OF TEXAS
 
════════════
No. 08-0231
════════════
 
 
Omaha Healthcare Center, LLC, 
Petitioner,
 
v.
 
Wilma Johnson, on Behalf of 
the Estate of
Classie Mae Reed, Deceased, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Sixth District of Texas
════════════════════════════════════════════════════
 
 
            
Justice Johnson delivered 
the opinion of the Court, in which Chief 
Justice Jefferson, Justice 
Hecht, Justice Wainwright, 
Justice Green, Justice Willett, and Justice Guzman 
joined.
 
            
Justice Lehrmann filed a 
dissenting opinion, in which Justice 
Medina joined.
 
 
            
In this case we consider whether claims against a nursing home regarding 
a patient’s death alleged to have been caused by a brown recluse spider bite are 
health care liability claims (HCLCs) that required an expert report to be 
served. The trial court and court of appeals held that they were not. We 
disagree.
I. 
Background
            
Wilma Johnson, on behalf of the estate of her deceased sister, Classie Mae Reed, filed suit against Omaha Healthcare Center 
(Omaha), a nursing home. Johnson alleged that while Reed was being cared for by 
Omaha she was bitten by a brown recluse spider and died. Johnson asserted that 
Omaha had a duty to use ordinary care in maintaining its premises in a safe 
condition and breached its duty by failing to (1) inspect the premises for 
spider and insect infestations, (2) properly clean the premises, (3) institute 
proper pest control policies and procedures, and (4) take the necessary actions 
to prevent insect and spider infestations.
            
Omaha filed a motion to dismiss on the grounds that Johnson’s claims were 
HCLCs and she did not serve an expert report as required by statute. See 
Tex. Civ. Prac. & Rem. Code § 
74.351 (a), (b)[1] (stating that an HCLC claimant must serve 
an expert report within 120 days of filing suit and a trial court shall dismiss 
the claim if no report is served). Johnson responded that her claims were 
matters of ordinary negligence and did not fall under the statutory definition 
of “health care liability claim.” The trial court denied Omaha’s motion and 
Omaha filed an interlocutory appeal. See id. § 51.014. The court of 
appeals affirmed. 246 S.W.3d 278. We reverse the 
judgment of the court of appeals and remand the case to the trial court with 
instructions to dismiss the case and consider Omaha’s request for attorney’s 
fees and costs.
II. 
Discussion
            
As relevant to this case an HCLC is
 
a cause of action against a health care provider or 
physician for treatment, lack of treatment, or other claimed departure from 
accepted standards of medical care, or health care, or safety or professional or 
administrative services directly related to health care, which proximately 
results in injury to or death of a claimant, whether the claimant’s claim or 
cause of action sounds in tort or contract.
 
Id. § 74.001(a)(13). “Health care” is
 
any act or treatment performed or furnished, or that should 
have been performed or furnished, by any health care provider for, to, or on 
behalf of a patient during the patient’s medical care, treatment, or 
confinement.
 
Id. § 74.001(a)(10); see Diversicare Gen. 
Partner, Inc. v. Rubio, 185 S.W.3d 842, 847 (Tex. 2005) (describing health 
care as “broadly defined”). “Safety” is not defined in the statute, so “we apply 
its meaning as consistent with the common law [which is] the condition of being 
‘untouched by danger; not exposed to danger; secure from danger, harm or loss.’” 
Diversicare, 185 S.W.3d 855 (quoting Black’s Law Dictionary 1336 (6th ed. 
1990)).
            
The court of appeals concluded that the claim was a safety claim and 
under section 74.001(a)(13), a safety claim must be 
“‘directly related to health care’ to be actionable as an HCLC.” 246 S.W.3d at 284. The court then concluded that because 
Johnson’s claims were neither integral to nor inseparable from the health care 
and nursing services Omaha provided to Reed, they were not HCLCs. Id. at 
287.
            
In this Court, Omaha asserts that Johnson’s claim is a safety claim 
directly related to health care and the court of appeals incorrectly determined 
otherwise.[2] Under such standard, Johnson’s claim 
against Omaha is an HCLC if it is for a departure from accepted standards of 
safety directly related to “any act . . . that should have been performed or 
furnished by [Omaha] to, or on behalf of [Reed] during [Reed’s] medical care, 
treatment, or confinement.” See Tex. Civ. Prac. & Rem. Code § 
74.001(a)(10), (13).
            
In order to determine whether a claim is an HCLC, we consider the 
underlying nature of the claim. Yamada v. Friend, 335 
S.W.3d 192, 196 (Tex. 2010). Artful pleading cannot alter that nature. 
Id.
            
The services a nursing home provides to its patients during their 
confinement include meeting patients’ fundamental needs. See Diversicare, 185 S.W.3d at 849. 
Part of the fundamental patient care required of a nursing home is to protect 
the health and safety of the residents. 40 Tex. Admin. Code § 
19.1701; see id. § 19.401(b) (providing that nursing home residents have 
a right to safe, decent, and clean conditions). A nursing home facility “must 
provide a safe, functional, sanitary, and comfortable environment for residents” 
and “must . . . maintain an effective pest control program.” Id. § 
19.309(1)(c). In its pest control program a nursing 
home must “use the least toxic . . . 
effective insecticides.” Id. § 
19.324.
            
The court of appeals concluded that just because there are regulations 
requiring pest control in nursing homes does not mean that the regulations are 
related to health care. 246 S.W.3d at 286-87. It found 
“no indication pest control judgments are actually, as 
opposed to theoretically, based on the physical care the patients require or 
implicate the medical duty to diagnose and treat.” Id. 
at 287.
            
But “health care” involves more than acts of physical care and medical 
diagnosis and treatment. It involves “any act performed or furnished, or 
that should have been performed or furnished, by any health care provider for, 
to, or on behalf of a patient during the patient’s . . . confinement.” Tex. Civ. Prac. & Rem. Code 
§ 74.001(a)(10) (emphasis added). And nursing 
homes are required to provide more than physical care and treatment. They are 
required to take actions to provide “quality care” which includes things such as 
safety of the environment. See Tex. Health & Safety Code 
§ 242.001(a)(1), (8).
            
As noted above, Johnson alleged that Omaha failed to maintain the 
premises in a safe condition by failing to inspect the premises, failing to 
properly clean the premises, failing to institute proper pest control policies, 
and failing to prevent insect and spider infestations. Although Johnson pled 
that Omaha was liable because it failed to exercise ordinary care to conduct the 
referenced activities, the underlying nature of her claim was that Omaha should 
have but did not exercise the care required of an ordinarily prudent nursing 
home to protect and care for Reed while she was confined there. That is, she 
alleged that Omaha failed to take appropriate actions to protect Reed from 
danger or harm while caring for her. See Diversicare, 185 S.W.3d at 855. 
Those claims fell within the statutory definition of a health care liability 
claim. Because they did, the statute required the suit to be dismissed unless 
Johnson timely filed an expert report. See Tex. Civ. Prac. & Rem. 
Code § 74.351 (a), 
(b).
III. Response 
to the Dissent
            
The dissent relies to a large degree on language derived from the 
dissenting opinions in Marks v. St. Luke’s Episcopal Hospital, 319 S.W.3d 
658 (Tex. 2010), and Diversicare, and the 
dissent’s interpretation of the statutory definitions of “health care liability 
claim” and “health care.” The dissenting opinions in Marks and Diversicare did not carry the day in those cases; 
they do not do so in this case. Further, we disagree with the dissent’s 
interpretation of the statutory language. The dissent opines that interpreting 
the language of the statute to mean what it simply and plainly says—as we 
do—will cause confusion. We fail to see how. Consistently interpreting statutory 
language according to its plain meaning and context, unless that interpretation 
yields an absurd or nonsensical result, honors the Legislature’s intent and 
reduces confusion by giving legislators, the bar, and ordinary persons 
confidence that courts will interpret statutes to mean what they say. See 
Molinet v. Kimbrell, ___ 
S.W.3d ___, ___ (Tex. 2011) (“Our primary objective in construing statutes is to 
give effect to the Legislature’s intent. The plain meaning of the text is the 
best expression of legislative intent unless a different meaning is apparent 
from the context or the plain meaning leads to absurd or nonsensical results.”) 
(citations omitted).
            
It is not absurd or nonsensical for the Legislature to have required that 
a party filing suit against a health care provider must timely serve a statutory 
expert report. In a suit against a nursing home—a health care provider—based on 
allegations that the facility failed to take proper actions it should have 
“performed or furnished, . . . for, to, or on behalf of a patient during the 
patient’s . . . confinement,” a claimant must timely serve a statutory expert 
report. Johnson did not do so and her claim must be dismissed.
IV. 
Conclusion
            
Johnson’s claim is an HCLC and should have been dismissed. Because Omaha 
requested its attorney’s fees and costs in the trial court pursuant to Civil 
Practice and Remedies Code section 74.351(b)(1), the 
case must be remanded.
            
We grant Omaha’s petition for review. Without hearing oral argument we 
reverse the court of appeals’ judgment and remand the case to the trial court 
with instructions to dismiss Johnson’s claims and consider Omaha’s request for 
attorney’s fees and costs.
 
 
 
                                                                        
________________________________________
                                                                        
Phil Johnson
                                                                        
Justice
 
 
OPINION DELIVERED: July 1, 2011






[1] Section 
74.351 was amended after Johnson’s cause of action accrued, and the prior law is 
applicable to Johnson’s claim. See Act of June 2, 2003, 78th Leg., R.S., 
ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, 
amended by Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590. At the time of 
Reed’s injury, the statute required an expert report to be served within 120 
days of the “claim” being filed. It now requires that an expert report be filed 
within 120 days of the filing of the “original petition.” Because the amendment 
has no impact on our analysis, for ease of reference we will cite the current 
version of the statute.

[2] Omaha 
does not challenge the court of appeals’ conclusion that a safety claim under 
section 74.001(a)(13) must be directly related to 
health care. We agree with Omaha that Johnson’s claim is directly related to 
health care and do not address the issue of whether it must 
be.