**Dissenting opinion issued April 1, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00292-CV

————————————

**CHRISTUS HEALTH GULF COAST (AS AN ENTITY, D/B/A CHRISTUS ST. CATHERINE HOSPITAL, AND FORMERLY D/B/A CHRISTUS ST. JOSEPH HOSPITAL), Appellant**

**V.**

**LINDA G. CARSWELL, Appellee**

---

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Case No. 2005-36179**

---

## OPINION DISSENTING FROM THE DENIAL OF EN BANC REVIEW

A hospital's management of an autopsy is a "professional or administrative service[] directly related to health care." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West 2011); *CHCA Bayshore, L.P. v. Ramos*, 388 S.W.3d 741,

747 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding that Chapter 74 governed claim for emotional distress arising from negligence in handling fetal remains). The panel in this case decides that fraud relating to procuring an autopsy is not a health care liability claim, and that the damages the jury awarded for mental anguish associated with this fraud are not subject to Chapter 74's limitations of liability. Because this decision departs from Chapter 74 and stands in disagreement with both our court's earlier panel decision in *Ramos* and the Dallas Court of Appeal's decision in *Swanner v. Bowman*, we should grant en banc review. *See id.*; *Swanner v. Bowman*, No. 05-02-00040-CV, 2002 WL 31478769, at *4 (Tex. App.—Dallas Nov. 7, 2002, pet. denied) (mem. op., not designated for publication).

*Professional or administrative service*

Beginning with the statutory language, Chapter 74 defines a health care liability claim as:

> [A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, *or safety or professional or administrative services directly related to health care*, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (emphasis added). Chapter 74 defines professional or administrative services as "those duties or services that a physician or health care provider is required to provide as a condition of

2

maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." *Id.* § 74.001(a)(24). To maintain its license, a hospital must comply with Title 25, Chapter 133 of the Administrative Code. 25 TEX. ADMIN. CODE § 133.21(b) (2013) (Tex. Dep't of State Health Servs., Hosp. Licensing). Under Chapter 133, a hospital "shall adopt, implement, and enforce protocols to be used in determining death and for filing autopsy reports which comply with [Chapter 671 of the Health and Safety Code]." *Id*. § 133.45(a). A hospital's management of an autopsy is thus a "professional or administrative service" under the health care liability statute. *See Ramos*, 388 S.W.3d at 745 (holding that handling fetal remains was professional or administrative service).

### *Directly related to health care*

To fall within the confines of a health care liability claim, the complained–of "professional or administrative service" must be directly related to health care. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). Carswell's husband was a Christus patient at the time of his death. Christus's mismanagement of her autopsy request and the representations its staff made to Carswell directly relate to the provision of health care services because only a physician may conduct an autopsy to determine the cause of death and to make a post–mortem diagnosis. The fraud claim in this suit depends on the proper protocols for "determining death and filing

3

autopsy reports." We should hold that Carswell's post–mortem fraud claim is a health care liability claim subject to Chapter 74.

In *Ramos*, our court held that a hospital's handling of fetal remains is directly related to health care because its actions related to medical services that the hospital had provided to its patient. 388 S.W.3d at 746. Similarly, in this case, Linda Carswell requested that an autopsy be performed to determine the cause of her husband's death and to make a post–mortem diagnosis of his medical condition; our court's holding in *Ramos* should dictate that Chapter 74 applies.

*Additional cases*

In *Swanner v. Bowman*, the plaintiffs alleged that a hospital's employees "conspired to conceal" the results of the administration of a drug by sending a body to the hospital's pathologist rather than to the county medical examiner. 2002 WL 31478769, at *4. The Dallas Court of Appeals held that the plaintiffs' claims against the hospital were health care liability claims. *Id.* The panel in this case incorrectly distinguishes *Swanner*'s facts, stating that "[t]he family did not assert any claims arising out of the hospital's decision to send the body to its own pathologist." 2013 WL 4602388 at *18. But, referring to the hospital employees' decision to send the body to the hospital's pathologist rather than to the county medical examiner as the plaintiffs requested, the *Swanner* court recited that the plaintiffs "alleged that [h]ospital employees conspired to conceal the results of the

4

administration of the drug." *Swanner*, 2002 WL 31478769 at *1, *4. Had the Dallas Court of Appeals determined that the fraudulent concealment claim was not a health care liability claim, then it would have concluded that at least part of the plaintiff's claim—against the hospital—did not fail for lack of an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West 2011); *compare id.*, *with* 2013 WL 4602388 at *19 (noting that civil conspiracy and intentional infliction of emotional distress claims against hospital "fell within" Medical Liability and Insurance Improvement Act.)

The conclusion that a hospital's fraud in connection with an autopsy directly relates to the provision of medical services is consistent with the Texas Supreme Court's frequent observation that the Legislature has more broadly defined "health care liability" under Chapter 74 than pure medical negligence. *See, e.g.*, *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 193 (Tex. 2012) (holding that hospital employee's claim that hospital failed to properly train, warn, and supervise him constituted health care liability claim); *Omaha Healthcare Ctr., LLC v. Johnson*, 344 S.W.3d 392, 396 (Tex. 2011) (holding that claim against nursing home regarding patient's death from spider bite constituted health care liability claim); *Yamada v. Friend*, 335 S.W.3d 192, 196–97 (Tex. 2010) (holding that claim against doctor for negligently advising water park regarding defibrillators can be brought only as health care liability claim); *Marks v. St. Luke's Episcopal*

*Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010) (holding that claim against hospital regarding patient's fall caused by defective footboard on hospital bed constituted health care liability claim); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005) (holding that inadequate–supervision claim, arising from hospital patient's sexual assault by another patient, constituted health care liability claim).

The panel relies upon *Salazar v. Dickey*, No. 04-08-00022-CV, 2010 WL 307852 (Tex. App.—San Antonio Jan. 27, 2010, pet. denied) (mem. op.), and *Hare v. Graham*, No. 02-07-00118-CV, 2007 WL 3037708 (Tex. App.—Fort Worth Oct. 18, 2007, pet. denied) (mem. op.), for the proposition that a claim relating to an autopsy cannot be a health care liability claim because a patient cannot receive medical treatment post–mortem. 2013 WL 4602388 at *20. But a health care liability claim includes "professional or administrative services directly related to health care," and performing an autopsy to determine the cause of death is a professional or administrative service. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). The *Salazar* and *Hare* courts incorrectly impose a temporal limitation on medical services by concluding that a health care liability claim can arise only during a patient's medical care. *Salazar*, 2010 WL 307852, at *4; *Hare*, 2007 WL 3037708, at *3. In *Ramos*, we rejected this interpretation and held that "it is not necessary that the professional or administrative services occur during the

6

patient's medical care, treatment, or confinement." 388 S.W.3d at 746. Such a limitation contravenes Chapter 74's broad language, which contains no temporal restriction. The reasoning adopted by the *Salazar* and *Hare* courts departs from the statutory definition of a health care liability claim; we should not adopt it. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).

## Conclusion

A hospital's management of the autopsy of a patient who died in its care is a professional or administrative service directly related to health care; Chapter 74 therefore governs a judgment of liability for fraud arising out of that management. The panel's decision to the contrary neither comports with the applicable statutory language, nor with an earlier decision of our court, nor with a decision by the Dallas Court of Appeals. For these reasons, we should grant en banc review. Accordingly, I respectfully dissent from our denial of en banc review.


Jane Bland
Justice

Justice Bland, joined by Justices Brown and Huddle, dissenting from the denial of en banc review.

7