

NUMBER 13-14-0004-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

VALLEY REGIONAL MEDICAL CENTER,                    Appellant,

v.

MARIA GUADALUPE CAMACHO,                    Appellee.

### On appeal from the County Court at Law No. 1
### of Cameron County, Texas.

# DISSENTING MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Dissenting Memorandum Opinion by Justice Benavides

I respectfully disagree with the majority and would hold that the allegation asserted by Maria Guadalupe Camacho against Valley Regional Medical Center ("Valley Regional") is an ordinary negligence claim and not a healthcare liability claim (HCLC).

Whether a claim is a HCLC depends on the underlying nature of the claim being

made, and artful pleading does not alter that nature. *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010). Thus, the relevant inquiry in this case is whether Camacho's claims against Valley Regional are healthcare liability claims under the "safety" prong of the definition of a HCLC.[1] *See Tex. W. Oaks Hosp. v. Williams*, 371 S.W.3d 171, 181 (Tex. 2012) (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West, Westlaw through 2013 3d C.S.) ("'Health care liability claim' means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of . . . safety . . . which proximately results in injury to or death of a claimant. . . .).

The inclusion of the "safety" prong undoubtedly "expanded the scope of the statute beyond what it would be if it only covered medical and health care," *see W. Oaks*, 371 S.W.3d at 184, but the boundaries of the safety prong are not without limitation. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 845 (Tex. 2005) ("There may be circumstances that give rise to premises liability claims in a healthcare setting that may not be properly classified as health care liability claims, but those circumstances are not present here."). Notwithstanding *Diversicare's* limiting principle of the "safety" prong, the Texas Supreme Court broadened its reading of the safety prong and held that "the safety component of HCLC's need not be directly related to the provision of health care." *W. Oaks*, 371 S.W.3d at 186.

I agree with the Texarkana Court's holding that *West Oaks* does not encompass "safety claims that are completely untethered from health care." *Good Shepherd Med. Ctr.-Linden, Inc. v. Twilley*, 422 S.W.3d 782 (Tex. App.—Texarkana 2013, pet. denied).

---

[1] Valley Regional's briefing focuses solely on whether Camacho's claims fall under the "safety" prong of a HCLC.

Additionally, it is worth noting that *West Oaks* has drawn recent criticism by at least two sitting Texas Supreme Court justices, who disagree with this broad interpretation altogether. *See Psychiatric Solutions, Inc. v. Palit*, 414 S.W.3d 724, 729 (Tex. 2013) (Boyd, J., concurring, joined by Lehrmann, J.) ("I agree with the Justices who dissented in [*West Oaks*].").

In any event, Camacho alleged the following relevant claims against Valley Regional in her First Amended Petition:

> Defendant [Valley Regional], negligently permitted such condition to exist, and negligently failed to adequately correct the conditions or warn [Camacho], despite the fact that [Valley Regional], its agents, servants, and/or employees knew, or in the exercise of ordinary care, should have known of the existence of the dangerous condition and that there was a likelihood of someone being injured, as happened to Plaintiff [Camacho]. Plaintiff further alleges that the dangerous condition of the Defendant's door and premises had continued for such a period of time that it should have been noticed by the Defendant and that Defendant should have warned patrons, such as the Plaintiff, of the condition and/or should have corrected the dangerous condition of the defective motion sensor of the sliding doors before the Plaintiff was crushed so that it would not be dangerous if the Defendant, its agents, servants and/or employees had exercised ordinary care in the inspection and maintenance of its premises.

Valley Regional relies on *West Oaks* and argues that Camacho's claims are HCLCs because the Infant Abduction System's (IAS) doors that closed on Camacho's body indirectly relate to healthcare because the system is designed to close and lock the doors in order to prevent infants from being abducted from the hospital. I disagree.

A safety HCLC—even one indirectly related to health care—should demonstrate a "logical, coherent nexus to health care." *Twilley*, 422 S.W.3d at 788. The term "safety" has been construed according to its commonly understood meaning as the "condition of being untouched by danger, not exposed to danger; secure from danger, harm or loss." *W. Oaks*, 371 S.W.3d at 184 (quoting *Diversicare*, 185 S.W.3d at 855 (internal

3

quotations omitted)).   As correctly defined by the majority, "health care" is "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement."   TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10).

This "logical, coherent nexus to healthcare" is found in each of the cases that the Texas Supreme Court has recognized to be either direct or indirect safety HCLCs.   *See, e.g., Psychiatric Solutions,* 414 S.W.3d at 724–27 (healthcare provider employee alleged that the healthcare provider employer provided inadequate security and training after he was injured from restraining a psychiatric patient); *W. Oaks*, 371 S.W.3d at 185 (healthcare provider employee claimant alleged that a mentally ill patient injured him while he provided care for the patient); *Harris Methodist Fort Worth v. Ollie*, 342 S.W.3d 525, 527 (Tex. 2011) (per curiam) (patient alleged that the hospital was negligent when she slipped and fell on a wet bathroom floor in her bathroom after a bath, following knee replacement surgery); *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663–64 (Tex. 2010) (patient claimant alleged that the hospital failed to provide him with a properly maintained or assembled hospital bed); *Diversicare*, 185 S.W.3d at 855 (patient claimant alleged that the healthcare provider failed to adequately supervise patients when she was assaulted by another patient).   That nexus is absent in this case. Furthermore, the above-referenced cases indicate that the Texas Supreme Court has not yet extended the definition and application of "departures from accepted standards of safety" to non-patient, non-healthcare-employee claimants like Camacho.

The facts here are separable and untethered from "health care" because they relate more to a malfunctioning electronic door system, whose primary purpose related

4

to prevention of crime (i.e., infant abductions), than a breach of standards of safety as they relate to healthcare. Camacho was visiting a family member who had just given birth to a baby in Valley Regional's Women's Center, where the IAS system was in place. As she exited the Women's Center, the malfunctioning IAS pinned Camacho between the system's sliding doors. The IAS was in place in order to prevent infant abductions, but Camacho was not carrying an infant at the time of her injury, nor was an infant in the vicinity. While I agree with the majority that the general purpose of the doors is to protect new mothers and/or their infant children, this observation ignores that these doors are also utilized by the general public, including visitors to the hospital like Camacho, and the door was in an allegedly dangerous condition. In the abstract, virtually anything located in a healthcare setting can be linked to healthcare. But, a line must be drawn somewhere. Accordingly, I would hold that Camacho's claims involve a straight forward premises liability case and are not attempts to artfully plead out of a HCLC.

Additionally, the majority holds that despite the statutory requirement that a HCLC claimant must serve an expert report upon a health care provider defendant, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West, Westlaw through 2013 3d C.S.), it "may well be impossible" for Camacho to file such an expert report "due to the nature of her claim." The majority's position places Camacho in a very precarious position. On one hand, if Camacho fails to file an expert report—as she did in this case due to the near "impossibility" of finding a qualified expert—her claims will be dismissed with prejudice. *See id.* § 74.351(b)(2). On the other hand, if Camacho files a deficient report, Camacho may still face dismissal, if the report is incurable. *See id.* § 74.351(c). I disagree with

5

the majority's analysis on this issue and would hold that the Legislature did not intend this absurd result. *See Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 557 (Tex. 2014) ("We limit our analysis to the words of the statute and apply the plain meaning of those words unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results.") (internal quotations and citations omitted).

Finally, my conclusion today aligns with the purposes of the Texas Medical Liability Act (TMLA) and its predecessor statute, the Medical Liability Insurance Improvement Act—that is, to end the medical malpractice "crisis," lower medical malpractice insurance premiums, and increase the delivery of quality medical and health care in Texas. *See W. Oaks*, 371 S.W.3d at 177–78. By labeling Camacho's claims a HCLC, the majority sweeps yet another ordinary negligence claim into the ambit of the TMLA that malpractice insurers must now cover. As a result, the TMLA's fundamental purposes are thwarted as medical malpractice insurance rates will likely continue to rise as those insurance policies would be required to cover new claims that were not contemplated under the original insurance contracts. *See Diversicare*, 185 S.W.3d at 863 (O'Neill, J., dissenting, joined by Brister & Green, JJ.).

/s/ Gina M. Benavides
GINA M. BENAVIDES,
Justice

Delivered and filed the
9th day of, April 2015.

6