

## NUMBER 13-15-00118-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

**BAY AREA HEALTHCARE GROUP, LTD.,**                    **Appellant,**
**d/b/a CORPUS CHRISTI MEDICAL CENTER,**

**v.**

**BRENDA MARTINEZ,**                    **Appellee.**

---

### On appeal from the 148th District Court
### of Nueces County, Texas.

---

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza and Longoria**
**Memorandum Opinion by Justice Garza**

This is an appeal challenging a trial court's ruling under the expert report requirement of the Texas Medical Liability Act ("TMLA"). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West, Westlaw through 2015 R.S.). Appellant, Bay Area Healthcare Group, Ltd., d/b/a Corpus Christi Medical Center ("BAHG"), argues by three issues that

the trial court erred in denying its motion to dismiss a suit filed by appellee, Brenda Martinez. Because we find that Martinez's claim is not a health care liability claim ("HCLC"), we affirm.

## I. BACKGROUND

On January 24, 2013, Martinez sued Corpus Christi Medical Center ("CCMC") alleging the following facts:

> On or about May 23, 2011, Brenda Martinez, an employee for Defendant, was assigned, by her supervisor, trash and linen duty, which is not her usual and customary duty. She held the position of housekeeper. Trash and linen duty requires heavy lifting of many times, wet linens and heavy and overhead lifting of large trash bags. On this day, Brenda Martinez worked a full shift lifting heavy loads, including overhead lifting of trash bags and wet linens. On this day, there was a housekeeping audit and no help was available. At the end of her shift in the afternoon, Ms. Martinez went home and that evening began to feel soreness in her shoulder with pain in her left arm later that evening. She reported the injury upon returning to work.

The petition alleged that CCMC was a non-subscriber under the Texas Workers' Compensation Act and was liable for negligence.[1] In particular, Martinez alleged that CMCC was negligent by: (1) failing "to provide [her] with a safe work environment"; (2) failing to "provide assistance" to her; (3) failing "to implement and enforce safety policies"; (4) failing "to properly train"; (5) failing "to properly supervise"; and (6) failing "to provide a safe place to work."

BAHG filed an answer which generally denied the allegations and included a verified denial stating that there is a "defect in the parties." In particular, BAHG asserted that CCMC "is an improper party to this lawsuit as it was not Plaintiff's employer at the

---

[1] The petition also stated: "In the event any parties are misnamed or not included herein, it is Plaintiff's contention that such was a 'misnomer' and/or such parties are/were 'alter egos' of parties named herein. . . . In the event that the true parties are misidentified, Plaintiff hereby asserts reliance upon the doctrine of misidentification."

time of her alleged injuries and did not own or control the premises." Instead, BAHG asserted that "[Martinez]'s employer, and the entity that operates the business where [Martinez] worked, was at the time in question (and still is) Bay Area Healthcare Group, Ltd. d/b/a Corpus Christi Medical Center." On February 25, 2013, Martinez filed an amended petition naming the defendant as "Bay Area Healthcare Group, Ltd. d/b/a Corpus Christi Medical Center" and making the same allegations as in her original petition.

On June 26, 2013, Martinez filed expert reports authored by Paul Genecin, M.D., and Gerardo Zavala, M.D., purportedly supporting her claims. Genecin stated in his report, in part, as follows:

> It is my opinion that [BAHG] by and through its agents and employees . . . did breach the standard of care by not properly training Brenda Martinez in lifting techniques, not properly assessing her job task capabilities and not providing assistance to her when assigned a different job duty of the heavy lifting and transferring of trash and linens on May 23, 2011, which produce[d] neck and shoulder injuries on this date. These administrators and supervisors did not provide Brenda Martinez with a safe work environment on a day when the CEO was touring the hospital. Upon reporting the injury, she was not immediately provided with medical care to reduce the worsening of her injuries and had to seek healthcare on her own.

Over eighteen months later, BAHG moved to dismiss Martinez's suit for failing to comply with the TMLA's expert report requirement. *See id.* In particular, the motion to dismiss alleged that the expert reports were untimely filed. The motion sought dismissal as well as the award of attorney's fees. *See id.* § 74.351(b)(1). Martinez filed a response arguing that: (1) the expert reports were, in fact, timely filed; and (2) even if they were not timely filed, BAHG's motion should be denied because Martinez's claim is not an HCLC.

After a hearing, the trial court denied BAHG's motion to dismiss. This interlocutory

3

appeal followed. *See id.* § 51.014(a)(9) (West, Westlaw through 2015 R.S.) (authorizing immediate appeal from interlocutory order that "denies all or part of the relief sought by a motion under Section 74.351(b)").

## II. DISCUSSION

BAHG contends by its first issue that Martinez's claim is an HCLC; by its second issue that Martinez failed to timely file an expert report; and by its third issue that the trial court erred in denying its motion to dismiss and for attorney's fees.

## A. Applicable Law and Standard of Review

Under the version of the TMLA applicable to this case, a plaintiff seeking damages in an HCLC was required to serve a medical expert report upon each party's attorney no later than the 120th day after the date the original petition was filed. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, 2005 Tex. Gen. Laws 1590 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a)).[2] The statute defines an HCLC as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). If a plaintiff asserting an HCLC fails to timely file a compliant expert report and the defendant files a motion to dismiss, the

---

[2] The statute has since been amended to provide that the 120-day period begins on "the date each defendant's original answer is filed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West, Westlaw through 2015 R.S.). The prior version of the statute is applicable to Martinez's suit. *See* Act of June 14, 2013, 83rd Leg., R.S., ch. 870, 2013 Tex. Sess. Law Serv. ch. 870, § 3(b) (providing that amendments apply only to actions commenced on or after September 1, 2013).

4

trial court must grant the motion and award reasonable attorney's fees to the defendant. *Id.* § 74.351(b).

Whether a claim is an HCLC is a matter of statutory construction, which is a purely legal question that we review de novo. *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). To determine whether a cause of action falls under the statute's definition of an HCLC, we examine the claim's underlying nature. *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010). Artful pleading does not alter that nature. *Id.* In making the determination, we consider the entire court record, including the pleadings, motions and responses, and relevant evidence properly admitted. *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012).

BAHG alleged in its motion to dismiss that Martinez's claim is an HCLC under the "safety prong" of the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (providing that a cause of action against a health care provider for "departure from accepted standards of . . . safety" is an HCLC). "Safety" is not defined in the statute but is commonly defined as "the condition of being untouched by danger; not exposed to danger; secure from danger, harm or loss." *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005).

In *Ross v. St. Luke's Episcopal Hospital*, the Texas Supreme Court held that, to qualify as an HCLC, a claim alleging departure from safety standards need not be "directly related" to health care, but it must have a "substantive relationship with the providing of medical or health care." 462 S.W.3d 496, 504 (Tex. 2015). That is, there must be a

"substantive nexus between the safety standards allegedly violated and the provision of health care." *Id.*[3]

> [A]lthough the mere location of an injury in a health care facility or in a health care setting does not bring a claim based on that injury within the TMLA so that it is an HCLC, the fact that the incident could have occurred outside such a facility or setting does not preclude the claim from being an HCLC. The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety.

*Id.*

The *Ross* Court provided the following non-exclusive list of seven factors to consider when determining whether a safety claim "is substantively related to the defendant's providing of medical or health care and is therefore an HCLC":

1.  Whether the alleged negligence of the defendant occurred in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2.  Whether the injury occurred in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3.  Whether the claimant was in the process of seeking or receiving health care at the time of the injury;

4.  Whether the claimant was providing or assisting in providing health care at the time of the injury;

5.  Whether the alleged negligence was based on safety standards arising from professional duties owed by the health care provider;

6.  If an instrumentality was involved in the defendant's alleged negligence, whether it was a type used in providing health care; and

7.  Whether the alleged negligence occurred in the course of the defendant's taking action or failing to take action necessary to

---

[3] *Ross* was handed down after BAHG's motion to dismiss was filed and heard in the trial court.

6

comply with safety-related requirements set for health care providers by governmental or accrediting agencies.

*Id.* at 505.

## B.    Analysis

Referencing the seven *Ross* factors, BAHG argues on appeal that Martinez's claim is an HCLC because:

[Martinez] was, at the time of her alleged injury, "performing tasks with the purpose of protecting patients from harm" (removing unsanitary trash and dirty linens from patient areas and rooms); the "injuries occur[red] in a place where patients might be during the time they were receiving care" (patient units); the "obligation of the provider to protect persons who require special care" (the Hospital's patients) was implicated; Martinez was "assisting in providing health care" (by keeping the patient areas in a sanitary condition); "the alleged negligence [was] based on safety standards arising from professional duties owed by the health care provider" (the duty to provide a healthy environment for inpatients); and ["]the alleged negligence occur[red] in the course of defendant's taking action . . . to comply with [governmental] safety-related requirements." (Texas Health & Safety Code Sections 241.026(a) and 241.029(a)(1) and Texas Administrative Code Section 1331(b)). This accounts for five (5) of the seven (7) considerations listed in the *Ross* case (and one of the seven—whether Martinez was a patient— does not even apply to this case).

We will address each of the factors in turn.

As to the first two factors, BAHG contends that Martinez was injured while "removing unsanitary trash and dirty linens from patient areas and rooms" and that her injuries therefore were sustained while "performing tasks with the purpose of protecting patients from harm" and "in a place where patients might be during the time they were receiving care." *See id.* We disagree. Martinez's petition did not allege that her injuries occurred in "patient areas or rooms." According to Genecin's expert report, Martinez was injured while "lifting several heaps of pounds of trash and linen and pushing the linen cart down the halls." There is no dispute that Martinez's injuries were sustained at the hospital, but the record does not support a finding that the injuries were sustained "in a

7

place where patients might be during the time they were receiving care."[4]  *See id.*
Moreover, while the removal of trash and dirty linens is certainly done at least in part for the benefit of patients, it is not done to protect patients from harm.  *See id.*  Consideration of the first two factors therefore weighs against a finding that the claim is an HCLC.

Next, BAHG argues that the third *Ross* factor "does not even apply to this case." But it is undisputed that Martinez was not, in fact, "in the process of seeking or receiving health care" at the time of her injury.  *See id.*  Accordingly, consideration of this factor weighs against a finding that the claim is an HCLC.

As to the fourth factor, BAHG contends that Martinez was "assisting in providing health care" by "keeping the patient areas in a sanitary condition."  We disagree.  Even under the extremely expansive definition of "health care" provided in the TMLA, it is doubtful that the removal and transportation of trash and laundry can be considered "assisting in providing health care."  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10) ("'Health care' means any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement.").  Essentially, BAHG's argument is that Martinez's activities—the removal and transportation of trash and laundry—ought to be considered "assisting in providing health care" because they took place in "patient areas."  But that is precisely what the supreme court warned against in *Ross*.  *See* 462 S.W.3d at 504–05 (stating that "the mere location of an injury in a health

---

[4] In a deposition excerpt attached to BAHG's motion to dismiss, Martinez stated that, on the day in question, she started her trash collection in the intensive care unit of the hospital.  However, she did not state that she suffered her injuries there.

care facility or in a health care setting" does not make a claim an HCLC). Consideration of this factor weighs against a finding that the claim is an HCLC.

Regarding the fifth factor, BAHG argues that Martinez's claim is based on the hospital's "duty to provide a healthy environment for inpatients." But BAHG does not establish that such duty—i.e., the duty to remove and transport trash and dirty linens—is a "professional dut[y]" owed by BAHG by virtue of its status as a health care provider. *See id.* at 505 (finding that there was no evidence that the hospital's alleged negligence "was based on safety standards arising from professional duties owed by the hospital *as a health care provider*" (emphasis added)). Instead, as Martinez notes on appeal, she was not hurt by anything that could have posed a risk of harm to a patient, because patients are never put in the position of having to lift and transport trash and dirty linens. As to the sixth factor, the only "instrumentality" involved in Martinez's injuries, if any, was the cart she used to transport dirty linens. This is not the type of instrumentality used in providing health care. Our consideration of these factors weighs against a finding that the claim is an HCLC.

Finally, we consider the seventh *Ross* factor. BAHG alleges that Martinez's claim was based on its alleged failure to "take action necessary to comply with [governmental] safety-related requirements." *See id.* It cites the following provisions of the Texas Hospital Licensing Law ("THLL"):

Sec. 241.026. RULES AND MINIMUM STANDARDS.

(a)     The [Texas Board of Health] shall adopt and enforce rules to further the purposes of this chapter. The rules at a minimum shall address:

(1)     minimum requirements for staffing by physicians and nurses;

(2)     hospital services relating to patient care;

9

(3)    fire prevention, safety, and sanitation requirements in hospitals;

(4)    patient care and a patient bill of rights;

(5)    compliance with other state and federal laws affecting the health, safety, and rights of hospital patients; and

(6)    compliance with nursing peer review under Subchapter I, Chapter 301, and Chapter 303, Occupations Code, and the rules of the Texas Board of Nursing relating to peer review.

TEX. HEALTH & SAFETY CODE ANN. § 241.026 (West, Westlaw through 2015 R.S.).

Sec. 241.029.    POLICIES AND PROCEDURES RELATING TO WORKPLACE SAFETY.

(a)    The governing body of a hospital shall adopt policies and procedures related to the work environment for nurses to:

(1)    improve workplace safety and reduce the risk of injury, occupational illness, and violence . . . .

*Id.* § 241.029 (West, Westlaw through 2015 R.S.).  BAHG also cites "Texas Administrative Code Section 1331(b)," possibly referring to section 133.142 of title 25 of the administrative code, regulating hospital licensing, which provides:

(a)    Safety committee.  Each hospital shall have a multidisciplinary safety committee.  The hospital chief executive officer (CEO) shall appoint the chairman and members of the safety committee.

(1)    Safety officer.  The CEO shall appoint a safety officer who is knowledgeable in safety practices in health care facilities.  The safety officer shall be a member of the safety committee, and shall carry out the functions of the safety program.

(2)    Safety committee meetings.  The safety committee shall meet as required by the chairman, but not less than quarterly.  Written minutes of each meeting shall be retained for at least one year.

(3)    Safety activities.

(A)    Incident reports.  The safety committee shall establish an incident reporting system which includes a mechanism to ensure that all incidents recorded in

10

safety committee minutes are evaluated, and documentation is provided to show follow-up and corrective actions.

(B)     Safety policies and procedures.  Safety policies and procedures for each department or service shall be developed, implemented and enforced.

(C)     Safety training and continuing education.  Safety training shall be established as part of new employee orientation and in the continuing education of all employees.

(4)     Written authority.  The authority of the safety committee to take action when conditions exist that are a possible threat to life, health, or building damage, shall be defined in writing and approved by the governing body.

(b)     Safety manual.  Each department or service shall have a safety policy and procedure manual within their own area that becomes a part of the overall facility safety manual.

(c)     Emergency communication system.  An emergency communication system shall be provided in each facility.  The system shall be self-sufficient and capable of operating without reliance on the building's service or emergency power supply.  Such system shall have the capability of communicating with the available community or state emergency networks, including police and fire departments.

25 TEX. ADMIN. CODE § 133.142 (West, Westlaw through 40 Tex. Reg. 6792).

Martinez's petition alleges in part that BAHG was negligent by failing "to implement and enforce safety policies."  Section 241.029(a) of the THLL requires hospitals to, among other things, "adopt policies and procedures related to the work environment for nurses to . . . improve workplace safety."  TEX. HEALTH & SAFETY CODE ANN. § 241.029(a)(1).  Further, the cited regulation requires a hospital's safety committee to develop, implement and enforce safety policies and procedures.  25 TEX. ADMIN. CODE § 133.142(A)(3)(B).  Therefore, in this regard, BAHG is correct that "the alleged negligence occurred in the

11

course of [its] taking action or failing to take action necessary to comply with [governmental] safety-related requirements." *See Ross*, 462 S.W.3d at 505.

However, the gravamen of Martinez's claim is BAHG's alleged failure to provide a safe work environment. More specifically, her principal allegation is that BAHG negligently instructed her to perform specific tasks—"lifting heavy loads, including overhead lifting of trash bags and wet linens"—which were not part of her "usual and customary" duties as BAHG's employee. BAHG directs us to no statute or regulation, and we find none, requiring a hospital to direct an employee to perform unusual, physically demanding tasks over the employee's objection.[5] Further, section 241.029(a) of the THLL concerns safety of the "work environment for nurses," and Martinez is not a nurse. *See* TEX. HEALTH & SAFETY CODE ANN. § 241.029(a)(1). We conclude that consideration of the seventh *Ross* factor weighs against a finding that the claim is an HCLC.

BAHG argues that Genecin's expert report shows that Martinez's claim had a substantive nexus to health care, because the report repeatedly referred to medical standards of care and standards of care applicable to hospitals. Further, Genecin's report stated that, "[u]pon reporting the injury, [Martinez] was not immediately provided with medical care to reduce the worsening of her injuries and had to seek healthcare on her own." Genecin concluded that this "denial of medical care" constituted a breach of the standard of care applicable to BAHG. BAHG argues that this is "a classic[] straight-up medical malpractice allegation." We disagree. Martinez claimed in her petition that BAHG was negligent in part by "failing to provide assistance" after she was injured, but

---

[5] According to Martinez's deposition testimony, she told her supervisor that she "didn't want to do" the assigned tasks "because it was too heavy for me to do it."

12

that claim does not necessarily implicate BAHG's duties *as a health care provider*. Rather, as Martinez notes on appeal, "any employer who refused Martinez the opportunity to see a doctor would be in breach, not just employers who happen to have doctors in the building." In any event, to the extent that Martinez asserts that BAHG failed to provide her with medical care after her injury, that is not the gravamen of her claim; indeed, she sets forth no facts in her petition that would substantiate such an assertion. We do not believe that the content of Genecin's report renders Martinez's claim an HCLC.

Considering all seven factors set forth in *Ross*, and in light of the entire record, we conclude that Martinez's claim does not "implicate [BAHG]'s duties as a health care provider, including its duties to provide for patient safety." *See id.* Instead, the claim alleges a departure from standards of safety that do not have a "substantive relationship with the providing of medical or health care." *See id.* Accordingly, the claim is not an HCLC and the trial court did not err in denying BAHG's motion to dismiss. We overrule BAHG's first and third issues.[6]

### III. CONCLUSION

The judgment of the trial court is affirmed.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
19th day of November, 2015.

---

[6] BAHG contends by its second issue that Martinez's expert reports were untimely because the 120-day period for filing an expert report should have started with the date Martinez filed her original petition, notwithstanding the apparent misnomer. In light of our conclusion that Martinez's claim is not an HCLC, this issue is moot; accordingly, we do not address it. *See* TEX. R. APP. P. 47.1.

13