

# Fourth Court of Appeals

## San Antonio, Texas

### OPINION

No. 04-14-00255-CV

Andres **BUENO**,
Appellant

v.

Melissa **HERNANDEZ**,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 13-03-52114-CV
Honorable Richard C. Terrell, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  December 31, 2014

REVERSED, RENDERED, AND REMANDED

Appellee Melissa Hernandez filed a motion for en banc reconsideration challenging this court's opinion issued on August 29, 2014.  After fully considering Hernandez's motion and Appellant Andres Bueno's response, the panel, acting *sua sponte*, withdraws its opinion and judgment issued on August 29, 2014, and substitutes this opinion and judgment in their stead.

Hernandez filed a suit alleging that while receiving care in the emergency room, she was sexually assaulted by an attending nurse, Andres Bueno.  After Hernandez failed to meet the mandatory 120-day expert report deadline, prescribed by section 74.351(a) of the Texas Civil

Practices and Remedies Code, the trial court granted Bueno's motion to dismiss. On March 25, 2014, the trial court granted Hernandez's motion for new trial as to Bueno and denied his motion to dismiss. We reverse the trial court's March 25, 2014 order, render judgment dismissing, with prejudice, Hernandez's claims against Bueno, and remand the cause to the trial court for a determination of court costs and attorney's fees to be awarded to Bueno pursuant to section 74.351(b)(1).

FACTUAL AND PROCEDURAL BACKGROUND

On March 25, 2011, Hernandez presented to the Christus Spohn Hospital Kleberg emergency room. Hernandez's chief complaint was severe stomach pain. She was attended to by Bueno, an employee of the hospital and a registered nurse. Hernandez alleges that after she was medicated, Bueno sexually assaulted her by touching and fondling her breasts and stomach. Hernandez was discharged the same day.

## A. Plaintiff's Original Petition and Defendant's Answer

On March 25, 2013, Hernandez sued Bueno for assault-infliction of bodily injury, assault-offensive physical contact, assault-threat of bodily injury, intentional infliction of emotional distress, and gross negligence. Specifically, Hernandez alleged Bueno "touched and fondled her breasts and stomach without her consent and removed her undergarments and inappropriately touched and gazed at her naked body." In his answer, Bueno contended that he never touched Hernandez in an inappropriate or unprofessional manner and that he performed his duties as a registered nurse in the emergency room *in accordance with standards of practice*. Bueno's answer set forth a detailed description of Hernandez's behavior on the day in question,

> According to medical records from Christus Spohn Kleberg Emergency Room, documentation by Dr. Arther Fernandez, states that the patient was very angry and agitated that all of her blood tests and CT scan results were normal and that she was being sent home. According to Dr. [ ] Fernandez that patient was yelling and threatening to sue the hospital if she was not admitted and her gallbladder removed.

**B.      Plaintiff's First Amended Petition**

On April 23, 2013, Appellee filed a first amended petition adding Christus Spohn Health System Corporation d/b/a Christus Spohn Hospital Kleberg as a defendant.[1]   In that amended petition, Hernandez used the following language to represent that both defendants were placed on notice of her claim pursuant to section 74.052 of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE § 74.052 (West Supp. 2014):

III.
C.P.R.C. CHAPTER 74

5.      Plaintiff would show that she has fully complied with the provisions of Chapter 74.051 of the Texas Civil Practice and Remedies Code as well as Section 74.052 of said Chapter.  Plaintiffs [sic] would show that in accordance with the foregoing provisions, Defendants were placed on notice of Plaintiff's claim prior to the filing of this lawsuit pursuant to Civil Practice and Remedies Code 74.052.

Hernandez's main cause of action against the hospital was negligence, claiming the hospital was responsible under the theory of respondeat superior for Bueno's acts.  Hernandez alleged the hospital departed from the standard of care regarding medical treatment to Hernandez and asserted the hospital and Bueno were jointly and severally responsible for Plaintiff's damages and injuries. The causes of action asserted against Bueno were limited to assault, intentional infliction of emotional distress, and gross negligence.  Based on the date the suit was filed, July 23, 2013 was the statutory deadline for Hernandez to file an expert report under 74.351(a).  *Id*. § 74.351(a).

In his First Amended Original Answer, served on Hernandez on August 12, 2013, Bueno contended that he was a health care provider and Hernandez's claims stem from actions taken while Hernandez was under his care and are therefore governed by Chapter 74 of the Texas Civil Practice and Remedies Code.  *See id*.  That same day, Hernandez's expert, Registered Nurse Shelley A. Botello, provided Hernandez's attorney with a written expert report regarding Bueno's

---

[1] Although Hernandez asserted causes of action against the hospital, they are not at issue in this appeal.

alleged deviations from the standard of care for a patient presenting with acute abdominal pain. The expert report was filed on August 19, 2013.

**C.      Defendant's Motion to Dismiss for Failure to Timely File Statutory Expert Report**

On September 11, 2013, Bueno filed objections to Hernandez's expert report, on the ground the report failed to address causation, and a motion to dismiss for failure to timely file the statutory expert report. *Id.* § 74.351(b).

On October 23, 2013, the trial court concluded Hernandez's claims against Bueno were health care liability claims and Hernandez's failure to file the expert report within the mandatory 120-day deadline required dismissal of her claims against Bueno. The trial court dismissed with prejudice all of Hernandez's claims against Bueno and awarded him attorney's fees.

On December 12, 2013, Hernandez filed a supplemental expert report addressing causation. On December 13, 2013, Hernandez filed a second amended petition asserting the claim notice pursuant to Texas Civil Practice and Remedies section 74.052 was only given to the hospital. No other changes were made to the original and first amended petitions. After Hernandez filed several motions requesting the trial court reconsider its dismissal order, on March 25, 2014, the trial court granted Hernandez's motion for new trial as to Bueno and denied Bueno's motion to dismiss. Bueno appealed.

## STANDARD OF REVIEW

Generally, an appellate court reviews a district court's ruling on a motion to dismiss under Chapter 74 for an abuse of discretion. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001). However, when the resolution of an issue on appeal requires the interpretation of a statute, an appellate court applies a de novo standard of review. *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012); *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012); *Tex. Laurel*

*Ridge Hosp., L.P. v. Almazan*, 374 S.W.3d 601, 604 (Tex. App.—San Antonio 2012, no pet.). Thus, in determining whether Hernandez's claims are health care liability claims under Chapter 74, we apply a de novo standard of review. *Tex. W. Oaks*, 371 S.W.3d at 177.

When interpreting a statute, an appellate court attempts to ascertain and give effect to the intent of the legislature. *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007). Where the statutory text is clear, an appellate court presumes the words chosen are "'the surest guide to legislative intent.'" *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (quoting *Entergy Gulf States v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009)). In doing so, we first look to the definitions prescribed by the legislature and any technical or particular meaning the words have acquired. *See* TEX. GOV'T CODE ANN. § 311.011(b) (West 2013). Only after considering the legislature's definitions does an appellate court look to the words' "plain and common meaning[s], unless [the legislature's] contrary intention is apparent from the context, or unless such a construction leads to absurd results." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008) (citations omitted).

## HEALTH CARE LIABILITY CLAIMS UNDER CHAPTER 74

### A. Expert Report Required for Health Care Liability Claims

Section 74.351(a) requires that, not later than the 120th day after filing suit, a claimant "serve on [each] party or the party's attorney one or more expert reports" for each physician or health care provider against whom a claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). If a report is not served, the trial court is required, upon motion by the affected physician or health care provider, to dismiss the claim with prejudice and award reasonable attorney's fees and costs. *Id.* § 74.351(b). The statutory expert report requirements apply to claims that fall within the statutory definition of "health care liability claim." *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005). Only health care liability claims require

an expert report under section 74.351. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a); *see Tex. Laurel Ridge Hosp.*, 374 S.W.3d at 604.

**B.      Scope of Health Care Liability Claim**

In the present case, our inquiry focuses on whether Hernandez's claims are health care liability claims. *See Loaisiga*, 379 S.W.3d at 255; *Drewery v. Adventist Health Sys./Tex., Inc.*, 344 S.W.3d 498, 504–05 (Tex. App.—Austin 2011, pet. denied) (citing *Nexus Recovery Ctr., Inc. v. Mathis*, 336 S.W.3d 360, 365–66, 368–69 (Tex. App.—Dallas 2011, no pet.)).

*1.      Health Care Liability Claim Definition*

Section 74.001(a)(13) defines a health care liability claim as

> . . . a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13); *see Diversicare*, 185 S.W.3d at 848. "[C]laims premised on facts that *could* support claims against a physician or health care provider for departures from accepted standards of medical care . . . directly related to health care are HCLCs, regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards." *Loaisiga*, 379 S.W.3d at 255 (emphasis original).

*2.      Relation to Rendition of Medical Services*

"A cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical services." *Diversicare*, 185 S.W.3d at 848. In determining whether a claim is inseparable from the rendition of medical care, we consider factors such as whether a specialized standard in the health care community applies to the alleged circumstances and whether the alleged act involves

medical judgment related to the patient's care or treatment. *See id.* at 847–52. The Texas Supreme Court set forth a three prong test to satisfy this definition: "(1) a physician or health care provider must be a defendant; (2) the claim . . . must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant." *Tex. W. Oaks*, 371 S.W.3d at 179–80; *accord Loaisiga*, 379 S.W.3d at 255; *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 662 (Tex. 2010). The Texas Supreme Court explained:

> The breadth of the statute's text essentially creates a presumption that a claim is an HCLC if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement. But the presumption is necessarily rebuttable. In some instances the only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare will be the healthcare setting (i.e., the physical location of the conduct in a health care facility), the defendant's status as a doctor or health care provider, or both.

*Loaisiga*, 379 S.W.3d at 256 (internal citations omitted).

### 3. *Underlying Nature of Claims*

Within these parameters, we determine whether the underlying nature of Hernandez's claims are so inextricably interwoven with the rendition of medical care or health care so as to constitute a health care liability claim. *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 546 (Tex. 2004). Whether a claim falls within this definition turns on "the gravamen of the claim, not the form of the pleadings." *Marks*, 319 S.W.3d at 664 (citing *Diversicare*, 185 S.W.3d at 854) (examining the "essence" or "underlying nature" of the claim); *accord Loaisiga*, 379 S.W.3d at 255. For Hernandez's claims to fall under the umbrella of a health care liability claim and require the timely filing of an expert report, Bueno must be a health care provider and Hernandez's injuries

must have resulted from either treatment, lack of treatment, or a departure from acceptable standards of care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12), (13).

**ANALYSIS**

When we examine the essence or underlying nature of Hernandez's claims against Bueno, *Marks*, 319 S.W.3d at 664, we note that all her claims stem from her allegations that he sexually assaulted her while she was a patient at Christus Spohn Hospital Kleberg. As this court has previously determined, "[i]t would defy logic to suggest that a sexual assault 'is an inseparable part of the rendition of medical care' or a departure from accepted standards of health care." *Holguin v. Laredo Reg'l Med. Ctr., L.P.*, 256 S.W.3d 349, 353 (Tex. App.—San Antonio 2008, no pet.) (quoting *Diversicare*, 185 S.W.3d at 848). Yet, we are mindful of the *Loaisiga* presumption that a claim is a health care liability claim when it involves a physician or health care provider and is based on facts evolved during the course of the patient's care. *Loaisiga*, 379 S.W.3d at 256. Here, the record clearly supports that Bueno was a health care provider and the assault about which Hernandez complains occurred while she was receiving treatment at the emergency room under Bueno's care. Accordingly, there is a presumption that the claim is a health care liability claim. *Id.*

Next, we must determine whether Hernandez successfully rebutted the presumption. *Id.* The gravamen of Hernandez's complaint is that she was inappropriately touched by Bueno while a patient at the emergency room. Hernandez presented at the emergency room complaining of severe stomach pain. Hernandez had to conclusively show that the allegation did not contain a:

(1)     . . . complaint about any act of [Bueno's] related to medical or health care services other than the alleged offensive contact,

(2)     the alleged offensive contact was not pursuant to actual or implied consent by the plaintiff, and

(3)     the only possible relationship between the alleged offensive contact and the rendition of medical services or healthcare was the setting in which the act took place.

*Id.* at 257; *compare id.* at 256 (conducting "an examination for the purpose of diagnosing or treating a patient's condition, [wherein] a medical or health care provider almost always will touch the patient intentionally.") *with Buck v. Blum*, 130 S.W.3d 285, 289–90 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (concluding neurologist's placement of his penis in patient's hand during neurological examination was not a HCLC).

In the instant case, the record indicates that Hernandez presented to the emergency room complaining of severe stomach pain. Bueno's interaction with Hernandez was, at the very least, initially that of a health care provider responding to a patient with an expressed malady. Bueno contended in his answer that his conduct consisted merely of activities necessary to assess Hernandez's physical condition. The late-filed report of Hernandez's expert likewise indicates Bueno needed to touch the area surrounding Hernandez's stomach to appropriately assess her condition. *See Loaisiga*, 379 S.W.3d at 256 (conducting "an examination for the purpose of diagnosing or treating a patient's condition, [wherein] a medical or health care provider almost always will touch the patient intentionally"). In the absence of a medical expert report, the trial court could not determine whether Bueno's conduct involved a routine examination, or exceeded the bounds of such an examination. *See id.* at 257–59 (citing *Vanderwerff v. Beathard*, 239 S.W.3d 406, 407–09 (Tex. App.—Dallas 2007, no pet.) (placing burden on the plaintiff to conclusively show that the only relationship between alleged wrongful conduct and rendition of medical services was physical location of the examination)). The expert report is necessary to provide the appropriate standard of care upon which the doctor's actions can be measured. *See id.* at 257 (citing *Vanderwerff*, 239 S.W.3d at 409).

While this court readily agrees that sexual assault of a patient is not within *any* medical standard of care, to proceed with Hernandez's claim without the benefit of an expert report setting forth the appropriate standard of care and any breaches of that standard would require the trial

court to assume the truth of Hernandez's allegations—that she was sexually assaulted. Looking at the record as a whole, we cannot conclude that Hernandez *conclusively* rebutted "the presumptive application of the [Texas Medical Liability Act's] expert report requirements." *Id*. at 261.

### CONCLUSION

Because the record clearly establishes Bueno was a health care provider and the alleged assault occurred while Bueno was providing medical care to Hernandez, there is a presumption that Hernandez's claims against Bueno are health care liability claims requiring an expert report pursuant to section 74.351(a). Hernandez failed to conclusively rebut the presumption. We, therefore, reverse the trial court's March 25, 2014 order, render judgment dismissing, with prejudice, Hernandez's claims against Bueno, and remand the cause to the trial court for a determination of court costs and attorney's fees to be awarded to Bueno pursuant to section 74.351(b)(1).

Patricia O. Alvarez, Justice