**HOPEBRIDGE HOSPITAL HOUSTON, L.L.C.,**
Appellant

v.

**Joshua LERMA, Appellee**

**NO. 14-16-00849-CV**

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed May 16, 2017

P. Alan Sanders, Julianne C. Lomax, Joshua Kinsey Davis, Houston, TX, for Appellant.

Cris A. Rasco, Texas City, TX, for Appellee.

Panel consists of Justices Christopher, Busby, and Jewell.

## OPINION

Kevin Jewell, Justice

This appeal requires us to decide whether intentional tort claims of assault and battery constitute health care liability claims. Rebecca Lerma, as next friend of her son Joshua Lerma, sued appellant Hopebridge Hospital Houston, L.L.C. for assault and battery; Joshua later joined the suit after his eighteenth birthday. Joshua alleged that, after he was admitted to Hopebridge for an accidental prescription medication overdose, Hopebridge's employees committed assault and battery while forcing him to remain in his bed. Contending Joshua's claims are health care liability claims governed by Texas Civil Practice and Remedies Code Chapter 74, Hopebridge filed a motion to dismiss and for attorney's fees because Joshua did not serve an expert report as the code requires. The trial court denied the motion and Hopebridge appeals.

We conclude that Joshua's claims are subject to Chapter 74's expert report requirement. Because the plaintiff failed to serve an expert report in support of his claims, we reverse and render judgment that Joshua take nothing against Hopebridge, and remand for further proceedings consistent with this opinion.

## Background

According to Joshua's amended petition, Joshua, a minor at the time, was admitted to Hopebridge for care related to an accidental overdose of prescription medications. His mother, Rebecca, accompanied Joshua during the admissions process, but later left for the evening at the request of hospital staff. At approximately midnight, Joshua, anxious and stressed, remained out of bed and ambulatory in his room. Three members of Hopebridge's staff attempted to force Joshua into bed. Joshua resisted these efforts, and during the ensuing struggle, Joshua allegedly received "multiple bruises, contusions, bleeding in his mouth and on his face[,] and a blood clot in his left eye."

Rebecca filed suit against Hopebridge on Joshua's behalf. Joshua subsequently appeared as a party, having reached his eighteenth birthday.[1] The live pleading alleged that Joshua's injuries resulted from being "severely beat[en]" by Hopebridge's staff, "consist[ing] of multiple blows" and "multiple kicks to all parts of Joshua's body." Joshua asserted claims for assault and battery.

Hopebridge answered, asserting a general denial. After the expiration of 120 days, Hopebridge filed a motion to dismiss and for attorney's fees, contending that Joshua's claims were health care liability claims governed by Chapter 74, which requires, among other things, a plaintiff to serve an expert report on a defendant health care provider not later than 120 days after the defendant files its answer. Because Joshua did not serve an expert report, Hopebridge argued that the trial court must dismiss Joshua's claims with prejudice and award reasonable attorney's fees and costs incurred. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b)(2).

After conducting a hearing on Hopebridge's motion to dismiss, the trial court denied the motion.

Hopebridge timely filed this accelerated interlocutory appeal.[2]

## Analysis

Hopebridge presents three issues for review. First, it contends that claims for assault and battery against a health care provider are health care liability claims under Chapter 74. Second, it argues that the trial court erred as a matter of law by denying Hopebridge's motion to dismiss. And third, should we agree with its first two issues, it seeks reasonable attorney's fees and court costs under section

---

1. While Hopebridge's docketing statement identified Joshua Lerma as the sole appellee, the appellate case style mirrored the case style in the trial court and indicated that Rebecca Lerma, as next friend of Joshua Lerma, was a party. Because Joshua Lerma is the proper appellee, we have changed the caption accordingly. *See, e.g., Garza v. Fliedner,* No. 05-15-01067-CV, 2016 WL 7438756, at *3, 5 & n.3 (Tex. App.—Dallas Dec. 27, 2016, pet. filed) (mem. op.) (noting general rule that a next friend's authority to act in a representative capacity expires when the minor reaches the age of majority, but that the minor may elect to continue prosecuting the suit in his own name).

2. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(9) ("A person may appeal from an interlocutory order ... [that] denies all or part of the relief sought by a motion under Section 74.351(b)."); Tex. R. App. P. 28.1(a) (appeals from interlocutory orders are accelerated appeals).

74.351(b)(1). We address the first two issues together, then turn to the third.

## A. Chapter 74 Health Care Liability Claims

■ The main issue in this appeal—whether Joshua's claims are health care liability claims—turns on the reach of the Texas Medical Liability Act ("TMLA"), a comprehensive medical malpractice reform measure. *See Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin*, 307 S.W.3d 283, 287 (Tex. 2010) ("[The TMLA] was enacted in 2003 as part of House Bill 4, a top-to-bottom overhaul of Texas malpractice law."). The TMLA is codified at Chapter 74 of the Texas Civil Practice and Remedies Code. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 864-82 (codified at Tex. Civ. Prac. & Rem. Code ch. 74). Because this case requires us to interpret the statute to determine whether it extends to Joshua's claims, our review is de novo. *Loaisiga v. Cerda*, 379 S.W.3d 248, 254-55 (Tex. 2012); *Mem'l Hermann Hosp. Sys. v. Kerrigan*, 383 S.W.3d 611, 612, 613 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

*1. What is a health care liability claim?*

■ As relevant here, section 74.351 requires a plaintiff, in cases involving a health care liability claim, to serve on the defendant one or more expert reports, on or before the 120th day after the defendant's original answer is filed. Tex. Civ. Prac. & Rem. Code § 74.351(a). An expert report means "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6).[3] If the plaintiff fails to serve an expert report within the 120-day period, the statute requires a trial court, upon motion, to dismiss the plaintiff's claim with prejudice. *Id.* § 74.351(b)(2).[4]

Section 74.351's expert report requirement applies only to a health care liability claim. The TMLA defines a "health care liability claim" as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

---

**3.** The expert report requirement is meant to identify frivolous claims and reduce the expense and time necessary to dispose of any that are filed. *See Loaisiga*, 379 S.W.3d at 258. It is a threshold requirement; it is not meant to force the plaintiff to marshal and present all of the plaintiff's proof. *See In re Alere Women's & Children's Health, LLC*, 357 S.W.3d 809, 812-13 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding); *see also* Tex. Civ. Prac. & Rem. Code § 74.351(k), (t) (expert report generally not admissible in evidence; cannot be used in a deposition, trial, or other proceeding; and shall not be referred to by any party during the course of the action for any purpose, unless the report is used by the claimant in the course of the action for any purpose other than to meet the service requirement of section 74.351(a)).

**4.** The statute also provides that the trial court "shall" award to the affected physician or health care provider reasonable attorney's fees and costs of court. This provision relates to Hopebridge's third issue, which we address in the next section. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b)(1).

Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). From this definition, the Supreme Court of Texas has identified three basic elements of a health care liability claim:

> (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant.

*Psychiatric Sols., Inc. v. Palit*, 414 S.W.3d 724, 725-26 (Tex. 2013) (citation omitted). The parties do not dispute that Hopebridge is a "health care provider" or that the acts or omissions alleged against Hopebridge's agents proximately caused Joshua's injuries.

The only dispute, then, pertains to the second element of a health care liability claim—whether Joshua's claims at issue "concern treatment, lack of treatment, or a departure from the accepted standards of medical care, or health care, or safety." *Id.* In its motion to dismiss, Hopebridge argued that "the nature of the work by the hospital staff necessarily involves at times the use of force," and so Joshua's claims invoked the standards of medical care, health care, or safety.[5] Joshua responded that his claims—"for assault and battery committed by two rouge [*sic*] hospital employees"—do not allege a breach of medical care or health care standards, but instead arise from one or more intentional torts committed by Hopebridge's staff members.

2. *How to determine the gravamen of the claims asserted.*

 We begin by noting, as the Supreme Court of Texas has observed, that the TMLA's broad language evidences legislative intent for the statute to have expansive application. *See Loaisiga*, 379 S.W.3d at 256 (citing, e.g., Tex. Civ. Prac. & Rem. Code § 74.001(a)(10)). In this regard, the code casts a wide net, particularly with respect to claims involving "health care," which include "any act ... performed ... by any health care provider for [or] to ... a patient during the patient's medical care, treatment, or confinement." Tex. Civ. Prac. & Rem. Code § 74.001(a)(10); *see also Loaisiga*, 379 S.W.3d at 255.

 Further, analysis of the second element of a health care liability claim focuses on the facts underlying the claim. *Loaisiga*, 379 S.W.3d at 255. A plaintiff cannot avoid the TMLA's requirements by "artfully-phrased language" or recasting of claims. *Id.*; *see also Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 854 (Tex. 2005); *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004). Accordingly, in ascertaining the gravamen of the claims asserted, we are not bound by Joshua's characterization of the claims. *See Buck v. Blum*, 130 S.W.3d 285, 291 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Rather, we look to the "entire court record" as a whole and the overall context of the plaintiff's suit, including the nature of the factual allegations in the pleadings, the motion to dismiss, the response, and any

---

**5.** Joshua did not sue Hopebridge's employees individually and did not expressly, allege that the employees were acting in the course and scope of their employment. Nor did Joshua assert a negligence claim against Hopebridge. Rather, Joshua alleged that Hopebridge itself committed the intentional torts described above. Assuming without deciding that Joshua articulated viable causes of action against Hopebridge, the issue before us is whether those claims are health care liability claims subject to Chapter 74's requirements.

relevant evidence properly admitted. *See Loaisiga*, 379 S.W.3d at 258-59.

Accordingly, a claim can be a health care liability claim regardless whether the plaintiff's petition explicitly cites the TMLA or alleges a breach of any accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care. *Id.* at 255. If a claim is premised on facts that could support liability for a breach of any such duties, then the claim is properly characterized as a health care liability claim and Chapter 74 applies. *See id.*

3. *Rebuttable presumption that claims against health care providers are health care liability claims.*

The TMLA's scope can encompass intentional tort claims as well, when warranted by the underlying facts. The Supreme Court of Texas addressed precisely that issue in *Loaisiga*. There, two patients sued a physician, alleging that the doctor assaulted the patients during a physical examination. *See Loaisiga*, 379 S.W.3d at 252-53. The patients contended that their assault claims were not health care liability claims because the assaults, as alleged, did not implicate medical or health care services, regardless of whether medical treatment was occurring at the time of the assaults. *See id.* at 258. The court disagreed, noting that "[d]uring an examination for the purpose of diagnosing or treating a patient's condition, a medical or health care provider almost always will touch the patient intentionally," and concluding that the patients failed to show that the doctor's conduct could not have been part of the examination he was performing. *Id.* at 256, 259-60.

As the *Loaisiga* court held, the breadth of the TMLA's text essentially creates a presumption that a patient's claim is a health care liability claim if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement. *See id.* at 256; *see also Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 662 (Tex. 2010). Here, Joshua's factual allegations implicate Hopebridge's agents' conduct during Joshua's care, treatment, or confinement as a patient recently admitted for treatment of an accidental drug overdose. Accordingly, Joshua's claims against Hopebridge are presumed to be health care liability claims. *See, e.g., Bueno v. Hernandez*, 454 S.W.3d 178, 184 (Tex. App.—San Antonio 2014, pet. denied) (op. on reh'g) (citing *Loaisiga*, 379 S.W.3d at 256).

Joshua can rebut the *Loaisiga* presumption, however, if the record—including the pleadings, motions, responses, and properly admitted evidence—"conclusively shows" that:

(1) there is no complaint about any act of the provider related to medical or health care services other than the alleged offensive contact, (2) the alleged offensive contact was not pursuant to actual or implied consent by the plaintiff, and (3) the only possible relationship between the alleged offensive contact and the rendition of medical services or healthcare was the setting in which the act took place.

*Loaisiga*, 379 S.W.3d at 257.

4. *Are Joshua's claims health care liability claims?*

We next examine whether Joshua has rebutted the presumption that his claims are health care liability claims. While Joshua would have to satisfy all three conditions in order to rebut *Loaisiga*'s presumption, we need focus only on

the third because it is dispositive on the present facts.

The limited record before us consists of the parties' pleadings and their filings regarding the motion to dismiss; no evidence was offered other than Hopebridge's hospital license. Turning to Joshua's live petition, he alleged that he was admitted to Hopebridge for medical treatment as a result of an accidental drug overdose. During the night, Joshua was anxious and restless and did not remain in bed. Joshua alleged that he suffered injury when he resisted the staff members' attempt to return him to bed.

The Supreme Court of Texas has reasoned that a "health care facility's 'training and staffing policies and supervision and protection of [a patient] and other residents are integral components of [the facility's] rendition of health care services.'" *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 181 (Tex. 2012) (quoting *Diversicare*, 185 S.W.3d at 850) (alterations in original). Claims involving employee supervision of a patient at a hospital can qualify as health care liability claims because the patient's presence at the health care facility is due to a patient-physician relationship. *Id.*

Here, the record does not conclusively rebut the presumption that Joshua's claims—alleging that he was intentionally injured while a patient at Hopebridge—are health care liability claims. Specifically, the record does not conclusively show that the "*only* possible relationship between the alleged offensive contact" and Hopebridge's rendition of care to Joshua is the fact that the alleged assault took place in a hospital. *Loaisiga*, 379 S.W.3d at 257 (emphasis added); *see also Vanderwerff v. Beathard*,

239 S.W.3d 406, 407-09 (Tex. App.—Dallas 2007, no pet.) (placing burden on the plaintiff to conclusively show that only relationship between alleged wrongful conduct and rendition of medical services was physical location of examination). Hopebridge's employees allegedly attempted to return to bed a patient admitted for treatment of a drug overdose; whether this was for Joshua's safety, the safety of other patients or staff, or some other reason—or whether it wholly deviated from an appropriate standard of care—is a question not for us, but for an expert versed in the applicable standards of hospital care or safety.[6] The facts as pleaded make clear that Hopebridge's complained-of conduct arose from one or more integral components of its rendition of health care services to a patient. *See Tex. W. Oaks*, 371 S.W.3d at 181. Joshua has not demonstrated that Hopebridge's complained-of conduct "is wholly and conclusively inconsistent with, and thus separable from, the rendition" of medical care, health care, or patient safety. *Loaisiga*, 379 S.W.3d at 256-57.

This court's precedent informs and supports our decision. In *Memorial Hermann Hospital System v. Kerrigan*, the father of a patient sued a hospital, after his daughter was allegedly injured by a hospital security guard's attempts to take the patient—who had been admitted as a result of a manic episode and who left her room when she "became increasingly restless and agitated"—back to her room. *Kerrigan*, 383 S.W.3d at 612, 614. This court held that each of the asserted claims—false imprisonment, assault, and negligence—"center[ed] on actions taken by Memorial Hermann's employees to ensure the safety of Kathleen, other patients, and

---

6. *See Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) ("There may be reasons for providing treatment without specific consent that do not breach any applicable standard of care. The existence or nonexistence of such reasons is necessarily the subject of expert testimony.").

other Memorial Hermann employees." *Id.* at 614. Similarly, Joshua left his bed to pace his room because he was "unable to sleep due to anxiety and stress." On this record, we cannot say that Hopebridge's employees' responsive attempts to return Joshua to his bed were "wholly and conclusively inconsistent with, and thus separable from," any applicable standard of care. *Loaisiga,* 379 S.W.3d at 256-57.

Additionally, our precedent aligns with that of other courts that have reached the same conclusion in analogous cases. The El Paso Court of Appeals determined that a patient's claims were health care liability claims when the patient, who had been admitted to a hospital after overdosing on an antipsychotic drug, broke free of his soft restraints, prompting emergency room staff to "subdue[ ] ... and pin[ ]" the patient to the floor. *See Simmons v. Texoma Med. Ctr.,* 329 S.W.3d 163, 166, 169 (Tex. App.—El Paso 2010, no pet.). As in *Simmons,* "because the causes of action alleged concern the hospital staff's actions in restraining a patient while receiving medical care, [Joshua's] claims will certainly require expert opinions to establish the medical and health care standards for a hospital's use of restraint on a[n] ... agitated ... patient treated for a drug overdose in the emergency room, whether the hospital staff breached those standards, and whether any improper conduct by the hospital staff in restraining, assessing, or monitoring [Joshua] was the proximate cause of his injuries." *Id.* at 169-70; *see*

*also Parker v. CCS/Meadow Pines, Inc.,* 166 S.W.3d 509, 513 (Tex. App.—Texarkana 2005, no pet.) (patient alleging claims arising from improper restraint were health care liability claims because "proving them would require establishment of the appropriate standards of care to be used when restraining or otherwise caring for mental patients").

Finally, we note that the Supreme Court of Texas has held "that if expert medical or health care testimony is necessary to prove or refute the merits of a claim against a physician or health care provider, the claim is a health care liability claim." *Palit,* 414 S.W.3d at 726. Here, the merits of Joshua's claims will depend on whether the conduct of Hopebridge's alleged employees involved permissible or necessary actions to restrain and confine a patient to bed, or whether the alleged employees' conduct exceeded the bounds of patient care.[7] *See Loaisiga,* 379 S.W.3d at 257-59. Joshua's allegations therefore implicate a breach of health care, medical care, or patient safety—standards that will require expert testimony to prove or refute them. *See Palit,* 414 S.W.3d at 726; *see also Loaisiga,* 379 S.W.3d at 255 ("[C]laims premised on facts that *could* support claims against a physician or health care provider for departures from accepted standards of medical care ... are [health care liability claims], regardless of whether the plaintiff alleges the defendant

---

7. In this court, Joshua repeatedly emphasizes that he was allegedly beaten by Hopebridge's "non-medical employees." The record does not support this argument; his petition simply alleges that those responsible were "staff members" of Hopebridge. In any event, the Supreme Court of Texas has stated that health care services may be provided by various professional staff, "including physicians, nurses, nurse aides, and orderlies who care for [patients]." *Diversicare,* 185 S.W.3d at 849-50;

*see also, e.g., Valley Baptist Med. Ctr. v. Azua,* 198 S.W.3d 810, 814 (Tex. App.—Corpus Christi 2006, no pet.) (orderly employed by health care institution was health care provider under Chapter 74). Accordingly, the medical or non-medical nature of the staff members' employment does not control whether Hopebridge—the named defendant—and its alleged employees deviated from an accepted standard of health care, medical care, or patient safety during the events in question.

is liable for breach of any of those standards.").

Based on the foregoing, we conclude that the record does not conclusively establish that the "only possible relationship between the alleged offensive contact" and the rendition of medical care, health care, or safety is the fact that it took place in a hospital. *Loaisiga*, 379 S.W.3d at 256. Because the entire record demonstrates that Hopebridge was a health care provider and the alleged assault and battery occurred while Hopebridge was providing medical care, or health care, or patient safety, the claims against Hopebridge are presumptively health care liability claims. *See id.* at 257-59. Joshua failed to conclusively rebut this presumption. Thus, we hold that his health care liability claims were subject to section 74.351(a)'s expert report requirements. *Id.* The trial court erred by denying Hopebridge's motion to dismiss Joshua's health care liability claims for failure to timely serve an expert report. Tex. Civ. Prac. & Rem. Code § 74.351(b).

We sustain Hopebridge's first two issues.

## B. Attorney's fees

 In its third issue, Hopebridge argues that it is entitled to attorney's fees and court costs under the TMLA. We agree.

Section 74.351(b) requires the trial court to dismiss the plaintiff's claim and award a health care provider reasonable attorney's fees and costs of court incurred by the health care provider, if the plaintiff fails to serve an expert report with the prescribed time limit, in cases involving health care liability claims. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b). Because we conclude that Joshua's claims were subject to the expert report requirement and no report was served, the trial court erred by failing

to dismiss Joshua's claims and award Hopebridge reasonable attorney's fees and costs of court. *See id.; see also Hernandez v. Ebrom*, 289 S.W.3d 316, 318 (Tex. 2009) ("If a timely and sufficient report is not served, the trial court must award the provider its attorney's fees and costs and dismiss the case with prejudice."); *CHCA Bayshore, L.P. v. Salazar*, No. 14-12-00928-CV, 2013 WL 1907888, at *3 (Tex. App.—Houston [14th Dist.] May 7, 2013, pet. denied) (mem. op.).

We sustain Hopebridge's third issue.

## Conclusion

Joshua's claims are based on an alleged departure from accepted standards of medical care, health care, or patient safety, and are health care liability claims. Therefore, Joshua was required to comply with section 74.351(a)'s expert report requirements. Because he failed to serve an expert report, the trial court erred in denying Hopebridge's motion to dismiss. Accordingly, we sustain Hopebridge's three issues, reverse the trial court's order and render judgment that Joshua take nothing from Hopebridge, and remand with instructions for the trial court to: (1) conduct further proceedings to determine the amount of reasonable attorney's fees that should be awarded to Hopebridge under the TMLA, and (2) award Hopebridge reasonable attorney's fees and court costs incurred by Hopebridge.