

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00429-CV

Benjamin Scott **ZERTUCHE**,
Appellant

v.

Chelsae **WESSELS** and Joey Urrabazo,
Appellees

From the 218th Judicial District Court, Atascosa County, Texas
Trial Court No. 13-10-0938-CVA
Honorable Karen H. Pozza, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Marialyn Barnard, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: November 14, 2018

DISMISSED WITH PREJUDICE IN PART; REMANDED

This is an interlocutory appeal from the trial court's order ruling on a physician's motion to dismiss health care liability claims against him. Because the claims based on the set of facts relating to medical care were health care liability claims (HCLCs), and the plaintiffs did not timely serve an expert report, the HCLCs should have been dismissed. The claims based on the other set of facts—distinguishable by time and nature—are not subject to dismissal for lack of an expert report.

## BACKGROUND

In conjunction with his divorce proceeding, Appellant Dr. Benjamin S. Zertuche sued Appellee Chelsae Wessels, his former mistress, for nine causes of action related to a health care business.

Wessels counterclaimed against Dr. Zertuche, a physician trained in obstetrics and gynecology, for assault, intentional infliction of emotional distress, and loss of consortium. Joey Urrabazo, who married Wessels in June 2016, sued Dr. Zertuche for intentional infliction of emotional distress and loss of consortium. To support their tort claims, Wessels and Urrabazo alleged facts spanning several years.

In 2009, shortly after Wessels began an intimate relationship with Dr. Zertuche, she became pregnant with Dr. Zertuche's child. Dr. Zertuche did not want the child, intentionally misinformed Wessels about the health of her unborn child, performed medical tests and treatments on her, and eventually subjected her to an abortion.

In January 2012, Dr. Zertuche violently pushed her onto a bed, pinned her down, and threatened her with violence. In February 2012, Dr. Zertuche held her in his vehicle for over five hours, smashed her head into the dashboard and the vehicle's window, and again threatened her. And in January 2014, Dr. Zertuche screamed at her, slammed her head against the wall, hit her head, grabbed her by the face, yelled directly into her ears, and threatened her with violence.

Dr. Zertuche filed a motion to dismiss their claims. He argued the claims were health care liability claims (HCLCs), and because Wessels did not serve the required expert report, the trial court was required to dismiss the claims with prejudice and award him reasonable attorney's fees and costs of court.

Without dismissing any of the claims, the trial court granted the motion to dismiss but denied Dr. Zertuche attorney's fees because "none of the claims alleged malpractice under the [Texas Medical Liability] Act."

Dr. Zertuche appeals.

### STANDARDS OF REVIEW

"We generally review a trial court's ruling on a motion to dismiss a health care liability claim for an abuse of discretion." *PHCC—La Hacienda Rehab. & Health Care Ctr. LLC v. Crume*, 492 S.W.3d 797, 800 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see Schwartz v. Fipps*, 553 S.W.3d 549, 552 (Tex. App.—San Antonio 2018, no pet.). But determining whether a "claim is a health care liability claim is a question of law we review de novo." *See Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 757 (Tex. 2014) (citing *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012)).

### HEALTH CARE LIABILITY CLAIMS

**A.    Definition**

The Texas Medical Liability Act (TMLA) defines a health care liability claim:

> [A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13); *see Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012) (listing the elements of an HCLC).

**B.    Claim Splitting Prohibited**

The Texas Supreme Court has "determined that a claim based on one set of facts cannot be spliced or divided into both an HCLC and another type of claim." *Loaisiga*, 379 S.W.3d at 255

(citing *Yamada v. Friend*, 335 S.W.3d 192, 197 (Tex. 2010)). *Loaisiga* explained this claim-splitting prohibition further:

> [C]laims premised on facts that *could* support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care are HCLCs, regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards.

*Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13)).

"[P]ermitting the same underlying facts to give rise to both types of claims would effectively negate the procedures and limitations of the TMLA." *Turtle Healthcare Grp., L.L.C. v. Linan*, 337 S.W.3d 865, 868 (Tex. 2011) (per curiam) (citing *Yamada*, 335 S.W.3d at 196–97). Thus, "[w]hen a plaintiff asserts a claim that is based on the same underlying facts as an HCLC that the plaintiff also asserts, both claims are HCLCs and must be dismissed if the plaintiff fails to produce a sufficient expert report." *PM Mgmt.-Trinity NC, LLC v. Kumets*, 404 S.W.3d 550, 552 (Tex. 2013) (per curiam); *accord Loaisiga*, 379 S.W.3d at 255; *Yamada*, 335 S.W.3d at 196–97.

## C.      Prohibition Based on One Set of Facts

The claim-splitting prohibition is addressed in cases where "the gravamen or essence of a cause of action is a health care liability claim." *E.g.*, *Yamada*, 335 S.W.3d at 197 (citing *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 854 (Tex. 2005)) (proscribing claim splitting for HCLCs). The prohibition applies when the claims are "based on one set of facts," *Loaisiga*, 379 S.W.3d at 255, "based on the same factual allegations," *Kumets*, 404 S.W.3d at 552, or "based on the same underlying facts," *Turtle Healthcare*, 337 S.W.3d at 868; *Yamada*, 335 S.W.3d at 193.

## WESSELS'S ASSAULT, IIED CLAIMS

In his first issue, Dr. Zertuche argues the trial court erred by not dismissing Wessels's assault and intentional infliction of emotional distress (IIED) claims because the claims are HCLCs and it is undisputed that no expert report was served.

Wessels contends her claims should not be dismissed because they are not HCLCs. In her view, she has not alleged HCLCs because she does not assert that Dr. Zertuche departed from any accepted standards of care, and she only included the medical care facts to show Dr. Zertuche's history of dealing with her and as a defense for his claims pertaining to the health care business.

### A.      Pregnancy, Abortion Facts

Wessels's first set of alleged facts occurred in July–August 2009 and the facts pertain to her pregnancy and abortion.[1] She alleges that in July 2009, after she told Dr. Zertuche she was pregnant with his child, he told her he felt the baby was not healthy. He intentionally misled her about the condition of her unborn child and falsely stated she had undergone a "missed abortion." He ordered medical tests to determine her pregnancy hormone levels, and despite the normal test results, he told her the unborn child was not healthy. He administered injections and oral medications that he told her would improve her hormone levels, but he later admitted the injections and medications were intended to induce a miscarriage or abortion.

Dr. Zertuche convinced Wessels to stop seeing her physician and entrust him with her medical care, which she did. Dr. Zertuche performed an ultrasound on Wessels. Although he told her at the time that the baby no longer had a heartbeat and the pregnancy was no longer viable, he later admitted he turned off the sound and held the ultrasound wand to make it appear as if the baby had no heartbeat.

---

[1] Paragraphs 24–39 of Defendants' First Amended Answer to Third Amended Third Party Petition and Counterclaim are the principal paragraphs that recite the facts pertaining to Wessels's pregnancy and abortion.

On the morning of August 28, 2009, Dr. Zertuche took Wessels to a hospital, admitted her, performed an abortion, and then discharged her.

**B.      Pregnancy, Abortion Facts Support HCLC**

Dr. Zertuche argues that the facts Wessels alleges could support an HCLC. With respect to the pregnancy and abortion facts, we agree.

First, it is undisputed that Dr. Zertuche is a physician. *See Loaisiga*, 379 S.W.3d at 255 (stating the first element is "the defendant is a health care provider or physician"). Second, Wessels supports her assault claim with facts pertaining to how Dr. Zertuche diagnosed her pregnancy, treated her "missed abortion," and performed medical tests and procedures on her. *See id.* (stating the second element pertains to "treatment, lack of treatment, or other claimed departure from accepted standards of medical care"). Third, Wessels's facts *could* support a claim that Dr. Zertuche "depart[ed] from accepted standards [and] proximately caused [her] injury." *See id.* (third element).

Even though Wessels expressly states she is not alleging Dr. Zertuche departed from accepted standards of care, her statement does not prevent her assault claim from being an HCLC. *See id.* ("[C]laims premised on facts that *could* support claims against a physician . . . for departures from accepted standards of medical care . . . are HCLCs, regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards."). Wessels's pregnancy and abortion facts *could* support an HCLC, and thus her assault and IIED claims based on the pregnancy and abortion facts are HCLCs. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (HCLC definition); *Loaisiga*, 379 S.W.3d at 255.

## C.      Family Violence Facts

Wessels's second set of alleged facts are separated by time and nature from her pregnancy and abortion facts.  This separate set of facts—which occurred in January and February of 2012, and in January of 2014—pertains to incidents of family violence.

Wessels alleges that in January 2012, Dr. Zertuche violently pushed her onto the bed, pinned her down, and repeatedly threatened her with violence.  She alleges that in February 2012, while she was riding with Dr. Zertuche, he became angry, he held her in the vehicle for five hours and then smashed her head into the dash and window.  She also alleges that in January 2014, Dr. Zertuche became enraged, threatened to harm her, slammed her against the wall, hit her head, grabbed her by the face, and yelled directly in her ears.

## D.      Family Violence Facts Do Not Support HCLC

The alleged family violence facts are separated by time and nature from the pregnancy and abortion facts, and the family violence facts cannot support an HCLC.  Although it is undisputed that Dr. Zertuche is a physician, Dr. Zertuche's alleged family violence acts have nothing to do with "treatment, lack of treatment, or other claimed departure from accepted standards of medical care," and Dr. Zertuche's acts do not implicate any "alleged departure from accepted standards [that] proximately caused [Wessels's] injury."  *See Loaisiga*, 379 S.W.3d at 255 (three elements).

We conclude that Wessels's assault and IIED claims based on the family violence facts are not HCLCs.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (HCLC definition); *Loaisiga*, 379 S.W.3d at 255 (HCLC elements).

## E.      Separate Assault, IIED Claims

Wessels's assault and IIED claims each rely on two different sets of facts that are separated by time and nature.  In legal effect, Wessels has two assault claims and two IIED claims: one

assault and one IIED claim are based on the pregnancy and abortion facts; the other assault and IIED claims are based on the family violence facts.

The former claims are HCLCs; the latter are not. *See Loaisiga*, 379 S.W.3d at 255. The absence of an expert report was no basis to dismiss the latter claims, *see Bueno v. Hernandez*, 454 S.W.3d 178, 183 (Tex. App.—San Antonio 2014, pet. denied) ("Only health care liability claims require an expert report under section 74.351."); the trial court was required to dismiss with prejudice the former claims, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); *Univ. of Tex. Health Sci. Ctr. at Houston v. Joplin*, 525 S.W.3d 772, 778 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

### URRABAZO'S IIED CLAIM

Wessels's husband Joey Urrabazo also sued Dr. Zertuche for IIED. In the same manner as his argument against Wessels's claims, Dr. Zertuche argues that Urrabazo's IIED claim is an HCLC, and because no expert report was served, Urrabazo's IIED claim should have been dismissed.

Urrabazo had, in legal effect, two IIED claims: one based on the pregnancy and abortion facts, and the other based on the family violence facts. Like Wessels's IIED claim, Urrabazo's IIED claim based on the pregnancy and abortion facts was an HCLC, and the trial court should have dismissed it with prejudice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (mandatory dismissal); *Loaisiga*, 379 S.W.3d at 255. But Urrabazo's IIED claim based on the family violence facts is not an HCLC, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (HCLC definition); *Loaisiga*, 379 S.W.3d at 255 (HCLC elements), and the absence of a timely served expert report provides no basis to dismiss it, *see Bueno*, 454 S.W.3d at 183.

## LOSS OF CONSORTIUM CLAIMS

Wessels and Urrabazo sued Dr. Zertuche for loss of consortium based on the injuries each suffered due to on Dr. Zertuche's actions. Wessels's and Urrabazo's loss of consortium claims derive from their assault and IIED claims. *See Brewerton v. Dalrymple*, 997 S.W.2d 212, 217 (Tex. 1999) (explaining that a wife's loss of consortium claim was "wholly derivative of her husband's intentional infliction claim" and because the IIED claim failed, the derivative loss of consortium claim also failed); *see also In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 646 (Tex. 2009) (discussing loss of consortium as a derivative claim).

Wessels's assault and IIED claims and Urrabazo's IIED claim that were based on the pregnancy and abortion facts must be dismissed with prejudice. Because the claims from which they are derived fail, Wessels's and Urrabazo's loss of consortium claims must also fail. *See Loberg v. HEB Grocery Co., L.P.*, No. 04-10-00877-CV, 2011 WL 4828198, at *2 (Tex. App.— San Antonio Oct. 12, 2011, pet. denied) (recognizing that a loss of consortium claim fails as a matter of law if the claim from which it is derived fails); *Am. Indus. Life Ins. Co. v. Ruvalcaba*, 64 S.W.3d 126, 144 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (same).

## ATTORNEY'S FEES

In his second issue, Dr. Zertuche argues that because the assault and IIED claims were HCLCs, and no expert report was served, the trial court was required to award him reasonable attorney's fees and costs of court. With respect to the claims based on the pregnancy and abortion facts, we agree.

## A. Statutory Requirement

The TMLA imposes specific requirements for HCLCs when an expert report has not been served as required:

(b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:

(1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

(2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); *see Garcia v. Marichalar*, 185 S.W.3d 70, 74 (Tex. App.—San Antonio 2005, no pet.).

## B.    Trial Court's Order

After Wessels did not timely serve an expert report, Dr. Zertuche filed a motion to dismiss the claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); *PM Mgmt.-Windcrest NC, LLC v. Sanchez*, 256 S.W.3d 396, 397 (Tex. App.—San Antonio 2008, no pet.) (citing *Garcia*, 185 S.W.3d at 74).

Without dismissing any of Wessels's or Urrabazo's claims, the trial court granted the motion to dismiss but denied Dr. Zertuche attorney's fees because "none of the claims alleged malpractice under the [Texas Medical Liability] Act."

## C.    Reasonable Attorney's Fees, Costs

As *Loaisiga* explains, alleging a departure from accepted standards of medical care is not an HCLC prerequisite. *Loaisiga*, 379 S.W.3d at 255 ("[F]acts that *could* support claims against a physician . . . for departures from accepted standards of medical care . . . are HCLCs, regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards."). Even though Wessels did not assert that Dr. Zertuche departed from any accepted standards of care, the assault and IIED claims based on the pregnancy and abortion facts are HCLCs. *See id.* Thus, the trial court was required to award Dr. Zertuche reasonable attorney's fees and costs of court that

were required to defend against only the HCLCs. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); *PM Mgmt.-Windcrest*, 256 S.W.3d at 397.

## CONCLUSION

In their counterclaims against Dr. Zertuche, Wessels and Urrabazo alleged two sets of facts: one set pertaining to Wessels's pregnancy and abortion, and a second set, separated by time and nature, pertaining to instances of family violence.

The claims based on the family violence facts are not HCLCs and are not subject to dismissal under the TMLA. But the claims based on the pregnancy and abortion facts are HCLCs, and because no expert report was timely served, and Dr. Zertuche moved to dismiss the claims, the trial court erred in not dismissing the claims with prejudice and awarding reasonable attorney's fees and costs of court.

We dismiss with prejudice the HCLCs that are based on the pregnancy and abortion facts, i.e., Wessels's assault, IIED, and loss of consortium claims, and Urrabazo's IIED and loss of consortium claims. The counterclaimants' assault, IIED, and loss of consortium claims based on the family violence facts are not HCLCs and are not subject to dismissal under the TMLA.

We remand this cause to the trial court to award reasonable attorney's fees and costs of court incurred for the dismissed claims only, and for further proceedings consistent with this opinion.

Patricia O. Alvarez, Justice